No. 43,760

M. C. Roush, Irely J. Wheeler, C. E. Klag, Ora R. Morgan, Howard J. Lane, Billy W. Baker, Paul A. Peare, Max L. Marble, Ray Spitler, H. A. Black and Walter L. Peare, *Appellants*, v. Leslie P. Hodge, President; Ulysses Lawrence, Vice President; Lawrence Shaffer, Recording Secretary; William R. Hastings, Financial Secretary; Ed A. Orange, Treasurer; Andy Kuykendall, Conductor; Roy Hurford, Warden; Charles Edgar Preston, Trustee; Lee Lyden, Trustee; James Edson, Trustee; Officers and Trustees of Local Union No. 201 of the United Brotherhood of Carpenters and Joiners of America, *Appellees*.

(394 P. 2d 101)

Opinion filed July 14, 1964.

*Edward F. Arn,* of Wichita, argued the cause, and *Richard F. Mullins, Milo M. Unruh, H. R. Kuhn,* and *Louis W. Cates,* all of Wichita, were with him on the briefs for the appellants.

*R. R. Barnes,* of Wichita, argued the cause, and *Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr.,* and *Cliff W. Ratner,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment on an accusation in contempt.

Local Union 201 in Wichita, Kansas is a local union of the United Brotherhood of Carpenters and Joiners of America. About November, 1960, Local Union 201 voted to affiliate with the Ark Valley District Council of Carpenters. On October 19, 1961, a dispute arose over dues and Local Union 201 voted to disaffiliate. Sometime thereafter the executive board of Local Union 201 announced it was going to increase the dues and made payments to the Ark Valley District Council. On May 6, 1962, the plaintiffs, as members of Local Union 201, brought an injunction action against the defendants, the officers of Local Union 201, seeking to enjoin the payment of any money to the Ark Valley District Council. The district court issued an injunction order in which it found:

"1. The Court finds that it has jurisdiction over the parties and the subject matter of this case.

"2. The Court further finds that, under Section 26 of the Constitution and Laws of the United Brotherhood of Carpenters and Joiners of America, there are two provisions for the affiliation of local unions with the District Council:

"a. Section 26 (a) is a mandatory provision, wherein local unions must belong to the District Council: and

"b. Section 26 (b) provides for the affiliation of local unions, described as a permissive affiliation with the District Council, and it was under this Section that Local 201 affiliated with Ark Valley District Council.

"3. The Court further finds that Local Union No. 201 of the United Brotherhood of Carpenters and Joiners of America terminated its affiliation with the Ark Valley District Council of the United Brotherhood of Carpenters and Joiners of America on October 19, 1961.

"4. The Court further finds that the dues of Local Union No. 201 subsequent to October 19, 1961, reverted back to whatever dues Local Union No. 201 voted for its local dues and prior to October 19, 1961, the dues of Local Union 201 were governed by the By-Laws of the Ark Valley District Council while so affiliated.

"5. The Court further finds that the defendants should be enjoined from the payment of any monies to the District Council of United Brotherhood of Carpenters and Joiners of America for the period subsequent to October 19, 1961, *so long as they remain disaffiliated with the District Council.*" (Emphasis supplied.)

Judgment was entered in accordance with the findings.

Following the ruling of the district court the General President of the United Brotherhood ordered a mandatory affiliation of Local

Union 201 with the Ark Valley District Council. When the local did not comply with the order, a trustee was sent from the United Brotherhood to take charge. The trustee caused the arrearages in dues owing the Ark Valley District Council to be paid.

The action, from which this appeal stems, was then filed as an accusation in contempt. The accusation alleged that the payment of the dues to the Ark Valley District Council was in violation of the injunction order.

Following the hearing on the accusation the trial court found in part:

"Under Section 26B of the Constitution and Laws of the United Brotherhood, the General President was given the authority to form district councils in areas that were not covered by the mandatory provisions of 26A, along with the authority granted to local councils to form voluntary district councils that is contained in 26B. The court further concluded that this authority granted to the Gen. Pres. in 26B carried the inherent power, of necessity, to require local councils in the affected territory or area to affiliate with a district council so formed by order of the Gen. President.

"The evidence clearly shows that the Gen. President did on Aug. 2, 1962 order Local 201 and other locals in this area to affiliate with the Ark Valley Dist. Council, and ordered that council, (which had previously been formed voluntarily by local councils including 201, and which 201 had later withdrawn from) to continue to exist for the good of the brotherhood, and with all named councils affiliated."

The trial court further found that the defendants were not in contempt of the injunction order and so decreed. The plaintiffs have appealed.

We will first give attention to appellees' motion to dismiss the appeal.

Appellees contend that the case involves an accusation for indirect criminal contempt and that an appeal will not lie from a judgment of not guilty.

The contention is without merit. The injunction order restrained the appellees for the benefit of the opposing parties and its violation, if any, was an offense against the parties in whose behalf the violated order was made. The original injunction was brought solely for the purpose of enforcing private rights and any violation would constitute civil contempt. The distinction between civil and criminal contempt was considered in *Hendrix v. Consolidated Van Lines, Inc.*, 176 Kan. 101, 269 P. 2d 435, where it was held:

"In a general way, civil contempt is defined as being the failure to do something ordered by a court to be done for the benefit or advantage of another

party to the proceeding, that is, disobedience of a court order or decree made in behalf of a litigant. A proceeding in civil contempt ordinarily is remedial and coercive in nature, and is brought for the enforcement of private rights and remedies.

"In a general way, criminal contempt is defined as being conduct which is in disrespect of a court or its processes, or which obstructs the administration of justice.

"In a civil contempt proceeding an appeal may be taken from a judgment of not guilty as well as from a judgment of guilty.

"In a criminal contempt proceeding an appeal may be taken from a judgment of guilty, but not from a judgment of not guilty." (Syl. ¶¶ 1-4.)

Appellees also contend that the appeal should be dismissed because the trial court did not have jurisdiction to render judgment in the original injunction action for the reason that the plaintiffs had not exhausted their remedies provided by the constitution and by-laws of the United Brotherhood.

Appellees call our attention to the well established rule that where the constitution and by-laws of an association provide means for settlement of grievances between members and the association, such remedies must be exhausted before resort can be had to the courts for redress.

Conceding only for the purpose of this discussion that the matter is jurisdictional, it can be stated, without doing violence to the general rule, that the rule has its exceptions. Where the proceedings are irregular and the association is acting without jurisdiction the aggrieved members may seek judicial redress in the first instance. Also where the controversy concerns money or property rights, as distinguished from matters of discipline, policy or doctrine, a court of equity may, in the first instance, investigate and determine whether the procedure has been in accordance with the provisions of the constitution and by-laws and correct any abuses. Such power is not abridged by the provisions of the association's constitution and by-laws. The qualifications applicable to the general rule are stated in 6 Am. Jr. 2d, Associations and Clubs, § 28, pp. 454 and 455, as follows:

"The general rule that courts will not intervene in the internal affairs of a voluntary association or club is subject to exception where the private rights of members are involved, it being generally recognized that judicial aid may be sought in case of actual or threatened invasion of the property or pecuniary rights of members. It has been held in this respect that the deprivation of pecuniary benefits resulting from binding contractual relations involves the question of due process of law.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

". . . Under the general rule, if the rights of a member of an ordinary club or association, involving some pecuniary interest, have been disturbed by the officials or a committee of the organization, he is entitled to ask a court of equity whether the rules of the organization have been observed, whether anything has been done which is contrary to natural justice, and whether the decision complained of was rendered after notice and according to the law of the organization and in good faith. . . ." (See, also, 7 C. J. S., Associations, § 34, p. 79.)

The trial court found that it had jurisdiction under the facts and circumstances when it issued the injunction order in the original action. No appeal was taken therefrom. We find no merit in appellees' contention that the appeal should be dismissed for lack of original jurisdiction.

We now approach the merits of the controversy. Appellants first suggest:

". . . Appellants contend, and trust that Appellees will concede, that by the instant appeal this Honorable Court is concerned only with the injunction order of July 12, 1962 and whether that permanent injunction was contemptuously violated by the Appellees. The question here is—were Appellees in contempt of the injunction order of July 12, 1962, or were they not. This appellate court should not be concerned with going behind that order of injunction of July 12, 1962 to retry the merits of it in order to reach a decision in this instant appeal. . . ."

This court has consistently held that where the parties accused of contempt are properly before the court, the merits of the original action are not to be considered. The sole question for determination is whether the injunction order, right or wrong, has been violated. (*Horn v. Seeger*, 174 Kan. 194, 255 P. 2d 997; *City of Wichita v. Wright*, 169 Kan. 268, 219 P. 2d 350; *Frey v. Willey*, 161 Kan. 196, 166 P. 2d 659; *Smith v. Clothier*, 113 Kan. 47, 213 Pac. 1071.)

The appellants state their position as follows:

"The permanent injunction order issued by the Trial Court on July 12, 1962, among other things, was that:

" 'The defendants (naming them) as officers and trustees of Local Union 201 are enjoined from paying any moneys belonging to Local Union No. 201 to the Ark Valley District Council of the United Brotherhood of Carpenters and Joiners of America so long as they remain disaffiliated with the District Council.'

"and, thus, the sole question before the Trial Court for its decision on June 3, 1963 and before this Court for decision now, is whether the defendants-Appellees violated the foregoing permanent injunction order issued July 12, 1962."

The issue has been fairly stated by appellants. It might be reduced further. Did Local Union 201 later become affiliated with

the Ark Valley District Council and thus avoid the trial court's admonition against the payment of money "so long as they remained disaffiliated with the District Council?" The trial court has answered the question in the affirmative. The appellants have assumed the heavy burden of convincing this court that the trial court did not understand what it meant by the injunction order and erroneously found the appellees not guilty of contempt.

The trial court found in its original injunction order that there are two provisions for the affiliation of local unions with district councils under the constitution of the United Brotherhood. These were (1) by a mandatory provision under section 26 (a) and (2) by permissive affiliation under section 26 (b). Regardless of whether the above finding was right or wrong, the trial court has now found in the contempt proceedings that under the provisions of sections 26 (a) and (b) of the constitution of the United Brotherhood, as interpreted by it in the original injunction action, that the general president had authority to require local unions to affiliate with district councils, and that the general president has ordered Local Union 201 affiliated with the Ark Valley District Council.

As has been previously stated this court cannot go into the merits of the original injunction action. Neither should it examine the constitution and by-laws of the United Brotherhood to determine the rights of the parties thereunder in this controversy. We must accept the trial court's interpretation.

Just what was meant by "remain disaffiliated" or "becomes affiliated" under the provisions of the original injunction order is somewhat ambiguous in view of the reference to the specific sections of the constitution of the United Brotherhood.

Where an injunction order is ambiguous or subject to more than one interpretation the trial judge which issued the order is the one person who knows definitely what was meant. This court, on appeal from a judgment of not guilty on an accusation in contempt, should not attempt to tell the trial court what it meant by its injunction order. It must be understood that by virtue of the very nature of a contempt proceeding the decision of guilt or innocence of an accused rests in the sound discretion of the trial court before whom the matter is pending. (*Haynes v. Haynes,* 168 Kan. 219, 212 P. 2d 312; *Brayfield v. Brayfield,* 175 Kan. 337,

264 P. 2d 1064.) The rule is particularly applicable where there is any question as to what was meant by the injunction order.

A careful examination of the record discloses no basis for a reversal of the trial court's judgment holding the appellees not guilty of contempt. It will be understood that questions relative to the merits of any controversies which may exist among the labor unions, their members and the parties to this controversy are not involved in the consideration of this case.

The judgment is affirmed.

APPROVED BY THE COURT.

ROBB, J., not participating.