THE WELLMAN ENGINEERING CO., APPELLANT, *v.* CALDERON
AUTOMATION, INC., ET AL., APPELLEES.

(No. 27183—Decided June 24, 1965.)

*Messrs. Jones, Day, Cockley & Reavis*, for appellant.
*Messrs. Day, Ketterer, Raley, Wright & Rybolt*, for appellees.

CORRIGAN, J. Contempt proceedings against defendant-appellee Calderon were dismissed, *sua sponte*, by the Court of Common Pleas after hearing plaintiff's, Wellman's, evidence in support of its motion to show cause and arresting the testimony started on behalf of Calderon.

The contemptuous conduct claimed by Wellman related to the alleged failure of Calderon to abide by the terms of an order of this Court of Appeals dated March 12, 1964. This latter order was remanded to the Court of Common Pleas for execution under the provisions of Section 2505.36, Revised Code.

386

Appeal is made to us on questions of law from the trial court's order dismissing the contempt charges.

Appellant assigns error in that the trial court erred in dismissing the action and granting judgment for defendants in the following particulars:

1. Plaintiff did not lose its right to enforce the Court of Appeals decree, as it applies to the Inland Steel job, by reaching agreement with Calderon on the U. S. Steel job.

2. There exists in the record no other basis for entering judgment for the defendants.

The pertinent part of the trial court's journal entry reads:

"* * *

"In the light of the conduct and relations of the parties since the Court of Appeals decision, especially the voluntary abrogation of the ruling pertaining to negotiations by the plaintiff, this court concludes, after reviewing the testimony and the exhibits, that as to this particular phase of the matter, namely, the charges in contempt, a finding should be entered for the defendants."

The ruling referred to in that excerpt is from the journal entry of this court. This provides in part as follows:

"* * *

"1. A permanent injunction is hereby granted, during the term of the 1958 License Agreement, as amended,

"(a) enjoining defendant Calderon, its officers, its employees, and agents, any persons in active concert or participation with them, and all persons having knowledge of such agreement, acting by, with, through and under them or by their order.

"* * *

"(ii) from negotiating or contracting with, or licensing, any person, firm or corporation other than plaintiff, Wellman, for the manufacture of equipment for charging iron or steel making furnaces with scrap embodying any inventions made by Albert Calderon or any employees of defendant Calderon, * * *, and from affording or furnishing to any such person, firm, or corporation, any license, plans, drawings, specifications, information, advice, know-how or aid or assistance of any nature whatsoever in respect of the manufacture of such equipment,

"Except that if, after acting in good faith and with reason,

(1) Wellman and Calderon are unable to agree on terms and conditions of any proposed contract between them for the manufacture by Wellman of any item of equipment for Calderon or (2) for reasons deemed sufficient by Wellman it shall decline to accept an order from Calderon for a particular item of equipment, Calderon shall be free to obtain said item from any other manufacturer as provided in paragraph 10 of said 1958 License Agreement; but this exception is applicable only to purchases of equipment by Calderon under the aforesaid provisions (1) and (2) above and is not applicable to any other purchase of equipment or to any other contract not covered by said provisions (1) and (2);

"(b) directing and requiring defendant Calderon, its officers, its employees, and agents, and all persons acting by, with, through and under them or by their order,

"(i) to perform defendant Calderon's obligations under the 1958 License Agreement, as amended;

"(ii) to keep Wellman advised with respect to inquiries from prospective purchasers of any equipment embodying any inventions made by Albert Calderon or any employees of Calderon relating to equipment for charging iron or steel making furnaces with scrap, * * *;

"(iii) to negotiate with Wellman in good faith in order that they may each obtain the maximum amount of benefit from the inventions made by Albert Calderon or any employees of Calderon relating to equipment for charging iron or steel-making furnaces with scrap, * * *, concerning the manufacture by Wellman of such equipment called for by inquiries from prospective purchaser thereof,

"Except that Wellman and Calderon are not required to negotiate with each other respecting those matters which are specifically provided for in said 1958 License Agreement, as amended, and hence Calderon has no right, whether Calderon has received an order from a prospective purchaser or not, to require Wellman to submit to competitive bidding or to negotiate concerning Wellman's price because the method for determining Wellman's price is specifically set forth in said 1958 License Agreement, as amended."

The method for determining Wellman's price is found in paragraph six of the 1958 License Agreement. It provides in

substance that, after Calderon has informed Wellman regarding the requirements of a prospective customer, Wellman shall furnish to Calderon a quotation of Wellman's price for manufacturing that equipment. Wellman's price "shall be determined by taking licensee's [Wellman's] estimate of the cost of manufacturing said equipment (including the detailed engineering involved, the fabricating and assembling of the equipment, the erection thereof by licensee or a subcontractor and all work incidental thereto), which is the sum of material costs, plus licensee's usual charges for labor and burden, plus an item equal to thirty-eight per cent (38%) of labor and burden plus the cost, if any, of erection by a subcontractor, this said sum to be divided by 85/100ths, and licensee shall inform licensor of the resulting price."

The "conduct and relations" referred to by the trial court seem to pertain, from a review of that court's interrogation of James Lightbody, Executive Vice President of Wellman, to Wellman's agreement with Calderon on the manufacture of the U. S. Steel job at a price different than Wellman had originally submitted to Calderon. Because of this manner of reaching the agreement on the U. S. Steel job, the trial court concluded and held that such dealing constituted a "voluntary abrogation" of this court's ruling on negotiating and that thereby Wellman abrogated its right to resist Calderon's efforts to negotiate price on the Inland Steel job.

Abrogate means to annul, destroy, revoke, repeal, or cancel; to put an end to; to do away with; to set aside.

We are unaware of any principle or rule of law concerning "voluntary abrogation" of a ruling of this court. The rights of the parties may not be vitiated thereunder. The order stands until modified, or vacated, or reversed, and is enforcible as far as the parties affected are concerned. The court below was in error in so holding.

It was not in dispute according to the evidence before the trial court that Calderon had awarded to Alliance Machine Company the job of engineering and manufacturing Calderon charging equipment for Inland Steel Company. This action by Calderon seems to be in direct violation of the exclusive license which Calderon had given to Wellman and in violation of the order of this court dated March 12, 1964.

There is other evidence in the bill of exceptions that similarly seems to be in violation of this same order of this court.

In our opinion a prima facie case of contempt was made herein, which then required defendants to present evidence of excuse, justification or other defense. The defendants were in the process of presenting evidence when the trial court, *sua sponte*, interrupted the presentation and dismissed the charge.

Calderon's brief urges that an appeal by Wellman does not lie from an acquittal and judgment in favor of defendant in a contempt case; and further that an appeal from an acquittal of the defendant of contempt charges would involve only the question of whether the trial court abused its discretion.

From our examination of the authorities, and applying them to the facts in this case, we have a civil contempt proceeding instituted to preserve and enforce the rights of private persons, which is civil, remedial and coercive, and not a criminal contempt which is punitive. As the Supreme Court of Ohio stated in *State v. Local Union 5760, United Steelworkers of America*, 172 Ohio St. 75, at 82, "* * * it is usually said that offenses against the dignity or process of the court are criminal contempts, whereas violations which are on their surface offenses against the party for whose benefit the order was made are civil contempts." Wellman's purpose in this action, as in all cases of civil contempt, is to obtain compliance with the lawful orders of the court.

Clearly, an appeal lies from the judgment of the trial court under Section 2705.09, Revised Code. See, also, *Loney v. Hall*, 8 Ohio App. 154; *Rossen v. Rossen*, 2 Ohio App. 2d 381; *Lamb v. Cramer*, 285 U. S. 217, 76 L. Ed. 715, 52 S. Ct. 315; *Roush v. Hodge*, 193 Kan. 473, 394 P. 2d 101; *Gibson v. Rogers*, 270 Ky. 159, 109 S. W. 2d 402; *In re Richardson*, 31 N. J. 391, 157 A. 2d 695; *Jastram v. McAuslan*, 29 R. I. 390, 71 A. 454.

As to the appellee's contention that an appeal from the dismissal of contempt charges involves only the question of whether the trial court abused its discretion, we find such a position untenable. As stated above, Section 2705.09, Revised Code, provides for review on appeal of the judgment and orders of a court made in cases of contempt. There is no limitation provided therein, which circumscribes the authority of the reviewing court to a determination of abuse of discretion, if any. Rather, an or-

390

der of dismissal entered in a civil contempt proceeding is reviewable in the same manner as other final judgments in civil causes. See, *In re Richardson*, 31 N. J. 391, 157 A. 695.

We are unable to discover any basis in law, which, on the facts in the record before us, would justify the finding for defendants and dismissal of plaintiff's motion to show cause why defendants should not be held in contempt. The judgment, therefore, is reversed and cause remanded for further proceedings in accordance with law.

*Judgment reversed.*

SILBERT, C. J., and KOVACHY, J., concur.