206 So.2d 171 (1967)
MASONITE CORPORATION
v.
INTERNATIONAL WOODWORKERS OF AMERICA, AFL-CIO and Local 5-443, International Woodworkers of America, AFL-CIO, et al.
No. 44827.
Supreme Court of Mississippi.
December 11, 1967.
Suggestion of Error Overruled January 29, 1968.
*173 Gibbes & Graves, Laurel, Hulse Hays, Cincinnati, Ohio, for appellant.
E.K. Collins, Quitman Ross, Laurel, for appellees.
ETHRIDGE, Chief Justice:
This is an appeal by Masonite Corporation, complainant, from a decree of the Chancery Court for the Second Judicial District of Jones County, Mississippi, dismissing after a hearing Masonite's petition to find appellees in contempt of court. They were charged with violation of a temporary injunction, which restrained them from engaging in a strike at Masonite's plant in Laurel, inducing or causing complainant's employees to strike, and picketing the plant. The temporary injunction was based upon a no-strike or interruption-of-work clause in the collective bargaining agreement between Masonite and the unions.
The defendants-appellees are International Woodworkers of America, AFL-CIO (called International), its Local 5-443 (called Local), and five officers and agents who signed the contract  J.D. Jolley, Chester Ishee, John A. West, Ben Johnson, and Thomas E. Lindsey. The seven parties were all of the defendants to the original bill for injunction, and will sometimes be referred to as the "original defendants" or "original appellees." Also made defendants to the contempt petition were about fifty individuals who were officers, shop committeemen, negotiating committeemen, and shop stewards of the Local.
We hold (1) that Masonite cannot appeal from the acquittal of appellees on criminal contempt charges, but that it has the right to appeal from that part of the decree dismissing civil contempt charges. It sought a coercive decree to enforce compliance with the injunction. (2) The clear and convincing evidence shows that the original appellees wilfully and contumaciously violated the temporary injunction, and the chancery court was manifestly wrong in holding otherwise. (3) The appeal as to criminal contempt is dismissed. The decree of the chancery court is affirmed in part, as to the fifty additional appellees. As to the International, the Local, and the five signatory officers, it is reversed and judgment is rendered here holding them guilty of civil contempt of court. The case is remanded to the chancery court for enforcement of this judgment, and for any further, additional proceedings consistent therewith.

I. BACKGROUND AND ISSUES
Masonite Corporation operates in the City of Laurel, Jones County, Mississippi, a large *174 manufacturing plant producing finished wood products. On March 3, 1967, the International Woodworkers of America, AFL-CIO, acting for itself and its local union 5-443, executed a collective bargaining agreement with Masonite. All of the 2,050 hourly bargaining unit employees of Masonite on April 21, 1967, were members of the union. On that date, the International and the Local unions, acting through their officers and agents, called a strike at Masonite's Laurel plant. All 2,050 members of the union walked out, and the union began picketing the plant.
Article 26 of the contract provides for a detailed five-step adjustment procedure and for arbitration. Article 23 is an "interruption of work" or "no-strike" clause. It provides:

Section 1. At no time during the full term of this Agreement, shall the Union or any of its members authorize or engage in any strike, walkout or other type of work stoppage. At no time, during such terms, shall the Employer lockout any of its employees.

Section 2. In the event any violation of the previous Section occurs, which is unauthorized by the Union, there shall be no liability on the part of the Union or any of its Officers or Agents, provided that in the event of such unauthorized action, the Union first meets the following conditions:
(a) The Union shall publicly declare in a newspaper having general distribution and publication in Laurel, Mississippi, that such action is unauthorized;
(b) The Union shall, within twenty-four (24) hours, promptly order all its members in the employ of the Employer to return to work in the plant of the Employer.

Section 3. Any employee who participates in any strike, walkout, or other type of work stoppage as specified in Section 1 of this Article, may be discharged, without right of appeal, by the Employer at its sole discretion.
On May 1, 1967, Masonite filed in the chancery court a bill for injunction against the International, Local 5-443, and J.D. Jolley, Chester Ishee, John A. West, Ben Johnson, and Thomas E. Lindsey, officers and agents of the Local and for the International and signatories to the collective bargaining agreement. The bill charged that defendants had actively participated in the breach of the collective bargaining agreement, in violation of the no-strike clause; that on April 21, 1967, defendant unions, acting through their agents, called the employees represented by them out on strike, and posted pickets at the entrance to complainant's plant in Laurel, with notices that the defendant unions were on strike. The strike and picketing had brought complainant's operations to a stand-still, and had thrown thousands of employees out of work. Defendants by calling the strike had violated their contract. The bill further charged that complainant had called upon defendants to terminate the illegal strike, to order their members to return to work, and to process any complaints or grievances through the orderly processes provided by the contract, but that defendants had refused to do so, and the strike continued pursuant to their authorization and under their direction. The strike and picketing were causing complainant and its employees irreparable injury and damages, for which they had no adequate remedy at law. As a result, complainant suffered and would continue to suffer substantial monetary losses, unless defendants were enjoined from engaging in the unlawful strike and picketing.
Thus the bill averred that complainant was entitled to an injunction enjoining and restraining defendants from striking, and causing complainant's employees to strike and picket, and interfering with the normal conduct of complainant's business. Hence the bill prayed that the defendants be temporarily and permanently enjoined *175 from such actions in violation of the contract, and that the injunction direct the unions and their officers to take certain affirmative steps in implementation of the relief sought. The bill also asked for general relief.
The injunction in question was issued pursuant to a fiat executed by a Supreme Court Justice on May 1, 1967. The fiat was returnable to the Chancery Court for the Second Judicial District of Jones County. The required $5,000 bond was filed by appellant and approved by the clerk. On May 2, the writ of injunction was served on all of the original defendants and was posted at two public places in the City of Laurel (the courthouse and the union house), as well as at Masonite's main-gate entrance to its plant, and at seven other gates and locations around the plant.
The writ of injunction is in substantially the terms of the prayer of the bill of complaint. It provides:
NOW THEREFORE, you, as defendants, and each of you and your officers, agents, representatives, employees and members and all other persons acting in concert with you or under your control, influence, persuasion or inducement be and you are hereby restrained and enjoined from engaging in a strike at complainant's plant in Laurel, Mississippi, and from inducing or causing complainant's employees to strike at complainant's plant in Laurel, Mississippi, and from engaging in picketing of complainant's plant in Laurel, Mississippi.
YOU ARE FURTHER ORDERED TO TAKE THE FOLLOWING AFFIRMATIVE ACTION FORTHWITH: To advise all of your officers, agents and employees, and all other persons acting in concert with them of the contents of this injunction, and to inform them that the work stoppage at complainant's plant at Laurel, Mississippi has been ended, and to direct each of your officers, agents, representatives and members employed by complainant at its mill in Laurel, Mississippi immediately to cease participating in the work stoppage and to advise them to return to work at their next scheduled working time.
You will comply with this writ of injunction until further order of this court upon penalty of contempt.
On May 4, 1967, Masonite, acting through R.E. Paul, its general manager, filed a charge or petition for citation of contempt against the defendants to the injunction suit, the International, the Local, the five signatories to the collective bargaining agreement, and about eighty individual defendants. Approximately thirty of the latter were not served with process, and complainant took a nonsuit as to them. The petition for contempt outlined the above stated facts, and charged that the injunction had been disobeyed by the defendants and the officers, agents, representatives, employees and members of the defendant unions, and other persons acting in concert with or under their control, influence, persuasion or inducement, as set forth in nine charges of contempt of court. Charges numbers 7 and 8 concern three individuals, and appellant concedes that no evidence was introduced as to those charges. Charges numbers 1 through 5 were as follows:
(1) The defendants and each of them have failed and refused to direct each of the officers, agents, representatives and members employed by complainant at its mill in Laurel, Mississippi, immediately to cease participating in the work stoppage.
(2) The defendants and each of them have failed and refused to advise each of the officers, agents, representatives and members employed by complainant at its mill in Laurel, Mississippi, to return to work at their next scheduled working time.
(3) The defendants and each of them have continued to engage in a strike at complainant's plant in Laurel, Mississippi.

*176 (4) The defendants and each of them have continued to engage in picketing of complainant's plant in Laurel, Mississippi, although they did cause "on strike" signs to be removed from the vicinity of the said premises.
(5) The defendants and each of them have induced and caused complainant's employees to continue on strike at complainant's plant in Laurel, Mississippi.
Charge number 6 pertained to approximately fifty individuals named in an attached exhibit. It averred that they were officers, shop committeemen, negotiating committeemen, or shop stewards duly selected by the defendant unions to represent the employees of complainant; that they had notice of the terms of the writ of injunction, and none had returned to work or offered to return to work; that each of them was continuing to engage in a strike, and was causing or inducing employees to strike.
The remaining Charge number 9 averred that on May 3, 1967, certain persons, including employees of complainant who were also employees and agents of the defendant unions, engaged in a strike near the complainant's plant by standing, sitting, or lying on the railroad tracks in the immediate vicinity of complainant's property for the purpose of blocking the movement of a railroad engine removing carloads of hardboard from complainant's property, in violation of the injunction.
The petition for contempt charged that all of the above acts of disobedience to the injunction were done knowingly, wilfully, and contumaciously by defendants and the other individuals, and that they constituted wilful contempt of the court's order. The petition then prayed for a coercive decree for future compliance with the injunction, and for an order for defendants to show cause why they should not be punished for contempt. It stated:
Affiant further alleges on information and belief that such acts of disobedience will continue unless the court coerces compliance with the Writ by a decree nisi conditioned upon compliance therewith.
WHEREFORE, an order is prayed for by the complainant against the defendants and the other named individuals them to appear and answer why they should not be punished jointly and severally for contempt of the Writ of Injunction of this court. Complainant further prays for a decree nisi against said defendants and the other named individuals conditioned upon compliance with the Writ of Injunction. Complainant prays for general relief.
International filed a separate answer, which stated that immediately upon learning that its members employed by complainant were on strike, it telegraphed J.D. Jolley, president of the Local, instructing him and all other officers and members of the Local to comply with Article 23. It attached a copy of a telegram, with its date not apparent, to that effect. However, International did not introduce in evidence any such telegram, or offer any evidence at the trial. Its answer merely denied that it had committed or sanctioned any of the acts charged. The Local union filed an answer which denied that its members were on strike at Masonite. It averred that on May 2, in compliance with the injunction, it had informed all of its members that the strike was ended and that they should return to work in the plant. Local offered no evidence to support these claims. The five named defendants in an answer denied they had violated the injunction. They asserted that they had obeyed it, and had caused all picketing to cease. They offered no evidence.
The chancery court entered an order to the defendants to appear and answer the charges of contempt, and to show cause why they should not be punished for contempt.
In the trial of this case on May 18 and 19, complainant offered nineteen witnesses, and rested. Defendant made a motion to exclude and enter judgment of acquittal. The chancellor sustained the motion to exclude *177 the evidence as to Charges 1, 2, 8, and 9. He overruled the motion as to Charges 3, 4, 5, and 6. Defendants then rested without offering any evidence.
The chancery court stated that the only issue was whether the injunction had been disobeyed. It recognized that there was involved both "a criminal contempt and a civil contempt charge." The evidence showed that, with the exception of two men, none of the members of the union had returned to work since the injunction was issued. There was no evidence in the record, the court stated, to explain why they had not returned. It found that the evidence showed that union-member employees of Masonite had parked in areas around each of the gates of the Masonite plant in unmarked cars, but not upon Masonite property; and that none of these people had made any attempt to interfere with anyone entering or leaving the plant. The effect of the failure of 2,000 people to return to work, the trial court thought, "should not be and is not taken into consideration by this court in determining whether or not this court finds the defendants have been guilty of violation of the mandate of the injunction." The only issue was whether complainants proved "beyond a reasonable doubt" that defendants and each of them were guilty of violating the injunction. The trial court held that "the proof is not sufficient and the bill of complaint will be dismissed." Hence the final decree held that "Masonite has not sustained the burden of proof and that the charge of contempt should be, and is hereby, dismissed finally, at the cost of complainant."
Subsequently, Masonite's original bill for injunction, pending appeal, was filed in this Court and was denied. It was held that the appropriate remedy was by supersedeas, application for which must be filed originally in the trial court; and that, when there is an appeal with supersedeas from a decree dissolving a temporary injunction, the supersedeas operates to keep in force the temporary injunction pending disposition of the appeal. Masonite Corp. v. International Woodworkers of America, 202 So.2d 41 (Miss. 1967). Thereafter, the chancellor denied supersedeas, and a Judge of this Court granted it, requiring a $25,000 bond (which was made) and directing that "the temporary injunction heretofore issued in this cause shall remain in full force and effect pending appeal to the Supreme Court of Mississippi."

II. RIGHT OF PLAINTIFF TO APPEAL CIVIL BUT NOT CRIMINAL CONTEMPT
Appellees have filed a motion to dismiss this appeal, because, they assert, there is no statutory authority for an appeal from an acquittal of contempt, and hence this court has no jurisdiction. They make the same point in their brief on the merits.
This question turns on the fact that in the present case there is involved both criminal and civil contempt. The former is not appealable by a plaintiff, while the latter is appealable by either party.
At common law, no appeal or writ of error lay from a judgment of a trial court in a contempt action. Each court was the sole and exclusive judge of contempts against its authority. Hence there was no right to appeal from a conviction of contempt. Watson v. Williams, 36 Miss. 331 (1858).
The Code of 1880 first provided for appeals from judgments convicting a person of contempt of court. It is now Mississippi Code 1942 Annotated section 1152 (1956). It provides that a person ordered by any tribunal to be punished for contempt may appeal and may supersede any fine imposed by a bond not exceeding $300. Appellant shall be entitled to bail, with an appearance bond of $300, "and on such appeal the question shall be whether the appellant was guilty of contempt." The Supreme Court may affirm, reverse, or modify the judgment, "according to the judgment of the appellate court."
*178 There does not appear to be any other statute authorizing an appeal from a conviction of criminal contempt. State v. Wingo, 221 Miss. 542, 73 So.2d 107 (1954), involved a conviction of Wingo, an attorney, for criminal contempt for filing an allegedly contemptuous motion for a county judge to recuse himself. He appealed, and the circuit court set aside that judgment. From that order of the circuit court, the State undertook to appeal under Code section 1153, which authorizes the State to appeal from a judgment acquitting a defendant where a question of law has been decided adversely to the State. This Court held that section 1153 authorizes an appeal by the State only where there is a question of law, and not a mixed question of law and fact. The Wingo contempt charge was for criminal contempt, and was governed by the rules applicable to criminal cases. The judgment was based upon a mixed question of law and fact, and thus the State was without right to prosecute the appeal. The motion to dismiss the appeal was sustained.
In Bryant v. Associates Discount Corporation, 251 Miss. 1, 167 So.2d 657 (1964), Bryant was convicted of civil contempt of court, and it was held that section 1152 authorized his appeal from a conviction of civil contempt. The statute was designed to protect a person convicted of any kind of contempt, civil or criminal.
Apparently no other statute authorizes appeal from an order concerning criminal contempt. Hence, insofar as the decree of the chancery court acquitted appellees of criminal contempt, for past offenses (violations of the injunction prior to the hearing of the charges), the appeal of Masonite is not properly taken, and to that extent it should be and is dismissed.
However, the civil contempt charges are in a different posture. The plaintiff in a civil contempt proceeding has a right to appeal under the provisions of the general statute pertaining to appeals in civil cases. Mississippi Code 1942 Annotated section 1147 (1956) provides that an appeal may be taken to the Supreme Court "from any final decree of the chancery court," by any of the parties or legal representatives of such parties. A civil contempt proceeding is "instituted to preserve and enforce the rights of private parties to suits." Griffith, Mississippi Chancery Practice § 666 (2d ed. 1950). See also Id. §§ 664-70. In short, that part of the decree pertaining to charges of civil contempt of court is appealable by the complainant.
This right of a plaintiff to appeal from the judgment of a court in a civil contempt proceeding dismissing the charges is in accord with the weight of authority and the better reasoned cases. Generally, the determining factor as to whether a contempt is to be classified as civil or criminal is the purpose for which the power is exercised. State v. Wingo, 221 Miss. 542, 547, 73 So.2d 107, 109 (1954); 17 Am.Jur.2d Contempt § 4 (1964); 17 C.J.S. Contempt § 5(2) (1963).
Code section 1278 gives the chancery court or chancellor the power to punish a person for breach of injunction, by fine or imprisonment. Code section 1656 provides that the Supreme, circuit, chancery, and county courts have the power to fine or imprison a person refusing to obey any order or judgment of the court, "until the rule, order, or judgment shall be complied with."
Griffith, Mississippi Chancery Practice, section 666 (2d ed. 1950), discussing these sections, says:
It will be seen that these statutes have evident reference to two classes of contempts, and these classes are: (1) Those prosecuted to preserve the power and vindicate the dignity of the court, and to punish for disobedience of its orders; and (2) those instituted to preserve and enforce the rights of private parties to suits. In the first the punishment is for a past offense and must be suffered; in the second the contemnor can discharge himself by paying the costs and expenses and *179 doing what he had previously refused to do. Approximately these two classes are distinguished as criminal and civil, but the same act which constitutes a civil contempt may be also of the other class and vice versa. * * *
The power of the court to imprison in a civil contempt in order to coerce the performance of a decree is without limit because, as already said, the contemnor himself may end the sentence by performing the decree or by declaring his willingness to perform it,  and being released he proceeds so to do with costs, if within his power.
Both the bill of complaint and the petition for contempt reflect that these proceedings were instituted primarily to preserve and enforce the rights of the private parties to the suit, namely, the contract rights of Masonite with the defendants. The prayer of the bill shows this primary purpose. See Goldfarb, The Contempt Power 49-67 (1963). The test is, what is the primary purpose of the suit? If it is for preserving and enforcing the rights of private litigants, as here, the contempt is civil. Hanna v. State ex rel. Rice, 169 Miss. 314, 324, 153 So. 371, 374 (1934); Ramsay v. Ramsay, 125 Miss. 715, 716, 88 So. 280, 281 (1921); Boylan v. Detrio, 187 F.2d 375, 378 (5th Cir.1951); International Minerals & Chem. Corp. v. Local 177, United Stone & Allied Prod. Workers, 74 N.M. 195, 392 P.2d 343 (1964); Philadelphia Marine Trade Ass'n v. International Longshoremen's Ass'n, 392 Pa. 500, 140 A.2d 814 (1958). The landmark labor contempt case of Gompers v. Buck's Stove & Range Company, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911), discusses in detail the appropriate criteria for distinguishing between civil and criminal contempt. See generally Muskovitz, Contempt of Injunctions, Civil and Criminal, 43 Colum.L.Rev. 780 (1943).
In the instant case, Charges 1 through 6, with the prayer for coercive relief, involved principally charges of civil contempt of court. They were and are appealable by Masonite.
Apparently Wood v. Ratliff, 138 Miss. 783, 103 So. 356, (1925), is the only Mississippi case relevant to the right of an aggrieved plaintiff in a civil contempt proceeding to appeal. The chancery court had declined to punish for civil contempt, but the Supreme Court entertained the appeal and reversed the lower court's decree, stating "the civil rights of the property holder * * * should be protected by the court * * *." Id. at 786, 103 So. at 356.
In Lamb v. Cramer, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715 (1932), a case which arose in Mississippi, the United States Supreme Court held that an order dismissing civil contempt charges was appealable. Two Kansas cases are analogous to the case at bar. Smith v. Clothier, 113 Kan. 47, 213 P. 1071 (1923), held that an appeal can be taken from a judgment finding the defendant not guilty of civil contempt. Hendrix v. Consolidated Van Lines, 176 Kan. 101, 269 P.2d 435 (1954), while holding that there can be no appeal from a judgment of not guilty in a criminal contempt proceeding, discussed at length the appealability of a judgment finding that no civil contempt had been committed. The court stated that such appeals exist in civil contempt proceedings, based upon the general appeals statute of Kansas. This statute is substantially similar to Mississippi Code section 1147. Kansas also has a specific statute, as does Mississippi, authorizing appeals from convictions of contempt.
Vilter Manufacturing Company v. Humphrey, 132 Wis. 587, 112 N.W. 1095 (1907), upheld an appeal by a plaintiff employer from an order denying a motion to punish the defendant, a member of a labor union, for contempt of court in violating an injunction. The proceedings were civil and the appeal was entertained.
Gibson v. Rogers, 270 Ky. 159, 109 S.W.2d 402 (1937), made this observation: "It would be a rare doctrine if a party could obtain *180 an order from a court commanding or prohibiting the doing of a thing, and could go no further if the court should fail to compel obedience to the order." Id. at 162, 109 S.W.2d at 403. See also Stringfellow v. Haines, 309 F.2d 910 (2d Cir.1962); Mason v. Miracle, 297 Ky. 479, 180 S.W.2d 403 (1944); In Re Richardson, 31 N.J. 391, 157 A.2d 695 (1960); Department of Health v. Roselle, 61 N.J. Super. 363, 160 A.2d 864 (Super.Ct. 1960), rev'd on other grounds, 34 N.J. 331, 169 A.2d 153 (1961); Wellman Eng'r Co. v. Caldon Automation, Inc., 2 Ohio App.2d 385, 209 N.E.2d 172 (Ct.App. 1965).
In summary, insofar as the decree of the chancery court acquitted appellees of past offenses, and declined to punish them in criminal contempt for disobedience of its order prior to the hearing, Masonite has no right of appeal. However, it can appeal under Code section 1147 from the holding of the chancery court that no civil contempt had been committed. The charges of civil contempt as set forth in Charges numbers 1 through 6 were, therefore, properly appealable to this Court, and now present issues appropriate for decision. Charge number 9 involves criminal contempt, and the appeal as to it is dismissed.

III. THE FACTS AND CIVIL CONTEMPT
In cases of criminal contempt, involving punishment for past disobedience of the court's orders, proof of defendant's guilt beyond a reasonable doubt is required. Johnson v. State, 254 Miss. 30, 179 So.2d 838 (1965); Jenkins v. State, 242 Miss. 627, 136 So.2d 205 (1962); Tillery v. Vines, 241 Miss. 349, 131 So.2d 191 (1961). On the other hand, a civil contempt proceeding is instituted to preserve and enforce the rights of private parties to suits. Although the authorities are not wholly in accord, we think that in civil contempt cases the weight and sufficiency of the evidence must be clear and convincing, as in a claim of fraud, and not beyond a reasonable doubt, as required in criminal cases. See Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929); 17 Am.Jur.2d Contempt § 98 (1964); 17 C.J.S. Contempt § 84(4), at 221 (1963); Goldfarb, The Contempt Power 251 (1963); Griffith, Mississippi Chancery Practice §§ 589, 666 (2d ed. 1950); Muskovitz, Contempt of Injunctions, Civil and Criminal, 48 Colum.L.Rev. 780, 818-19 (1943).
Although the chancery court recognized that this case involved both civil and criminal contempt, it erred in requiring appellant to prove civil contempt beyond a reasonable doubt. In the civil aspects of this proceeding, appellant's duty was to prove by clear and convincing evidence that the original defendants had violated the injunction. After careful study of this record, we are convinced that the chancery court was manifestly wrong in finding that the original defendants were not guilty of civil contempt of court. The clear and convincing evidence shows that they wilfully and contumaciously violated the temporary injunction and were in civil contempt of court.
Of course, the individual members of the unions cannot be ordered to work for Masonite or anyone else. The International and Local unions, and their officers and representatives, were simply enjoined by the temporary injunction, in accord with their contract with Masonite, from engaging in a strike, inducing or causing employees to strike, and from engaging in picketing.
On April 21, 1967, all of appellant's production and maintenance hourly employees, totalling 2,050 people, were members of the appellee unions. On that day all of these employees went out of the Laurel plant on strike. As of May 18 and 19, only four of these employees had returned to work, and of these four, two had returned for a few hours only.
At the trial, Masonite offered nineteen witnesses, consisting of representatives of the news media in the area, a number of *181 plant guards, its director of employee relations, and its safety inspector. Defendants rested without offering any witnesses.
As to the picketing, before the service of the injunction on May 2, the seven entrances to Masonite's plant were picketed by members of the union bearing signs. After service of the writ, the pickets moved across the street from the seven entrances and the signs disappeared. However, down to and including the dates of the hearings on May 18 and 19, these silent pickets, without signs, most of whom were identified as union members, maintained a constant surveillance at all entrances of the plant. They generally operated, both day and night, with two men in each automobile in four-hour shifts, and were relieved in a systematic and methodical manner. Officers of the union visited the pickets who were stationed from May 2 to May 19 within 60 to 75 feet of the back gate, and within 100 feet of the front gate. During that period only four hourly employees entered the plant, and only two remained for over a few hours. According to one guard for the plant, one truck entered the plant during this period. Another guard stated that during that time none had entered.
Representatives of all news media in the Laurel area (a newspaper and radio and television stations) testified that they made no announcements for the unions on May 2 and thereafter, except for the bare announcement of meetings called by the unions for that day; and that during the same period they published numerous notices, paid for by appellant, notifying employees of the times they should report for work in keeping with the injunction.
The record before the Court clearly and convincingly establishes that the original defendants violated the injunction during the period in question. They were enjoined from engaging in a strike at the plant in violation of the contract, from inducing or causing employees to strike, and from engaging in picketing. The International and Local, acting through their officers and representatives, were functioning as unions. On April 21, 2,050 of the appellant's employees walked out of the plant on strike. It is apparent that all 2,050 of these men did not refuse to return to work after May 2 without organization, leadership, and discipline from the unions. The unanimity of the earlier walkout and this later non-action of 2,050 men spells organization and leadership.
Somewhat similar to this situation is the sequel to United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), in which the government as operator of the coal mines obtained a preliminary injunction, the union went on strike, and the union and its president were found guilty of both civil and criminal contempt. Subsequently the United Mine Workers again went on strike in defiance of a temporary restraining order of the district court, contending that the miners had left the mine of their own volition and without any instructions from the president of the union. Judge Goldsborough, rejecting this defense in United States v. International Union, United Mine Workers, 77 F. Supp. 563 (D.D.C. 1948), stated:
But the defendants' contention is this: That the First and the Thirteenth Amendments were violated because, as a matter of fact, no strike was called, no strike existed. These men, it is contended, did, as individuals, what they had a right to do, work or not to work, and they decided not to work.
Now, we have to consider the validity of that claim objectively. If a nod or a wink or a code was used in place of the word "strike," there was just as much a strike called as if the word "strike" had been used. * * *
* * * * * *
Does that constitute a nod, or a wink, or the use of a code in order to call a strike? Is there any other reasonable interpretation?

*182 And then this Court believes that there is a principle of law which, as far as I know, no Court has ever been called upon to announce, because this use of a code in order for a union to avoid responsibility is a new thing. It is a new method of endeavoring to avoid responsibility.
The Court thinks the principle is this: that as long as a union is functioning as a union it must be held responsible for the mass action of its members. It is perfectly obvious not only in objective reasoning but because of experience that men don't act collectively without leadership. The idea of suggesting that from 350,000 to 450,000 men would all get the same idea at once, independently of leadership, and walk out of the mines, is of course simply ridiculous.
* * * [A] union that is functioning must be held responsible for the mass action of its members. (Id. at 566-567)
The parallel here is manifest. It is incredible to think that 2,050 men would stay out on strike, after the injunction was served on the union and its officers, of their individual volition, without leadership from the unions. Moreover, the unions' connection with the strike between May 2 and May 19 is amply reflected in the evidence, and not only by necessary inference. After May 2 the pickets around the plant simply took down their signs and moved across the street in automobiles. They maintained a silent surveillance and picketing of the plant, operating in four-hour shifts. These silent pickets were visited from time to time by officers of the union. Human experience teaches that it is highly improbable that over 2,050 union men would coincidentally decide, each for himself and without direction from his union, to stay on strike after the service of the injunction based upon the contract with the union. Moreover, the fact of a mass abstention from work, in the absence of adequate evidence to demonstrate the contrary, and there is none, is in itself sufficient to support the necessary inference that the continuance of the work stoppage was the result of concerted action by the unions aimed at a common objective.
The chancery court found that individual members and employees of Masonite had parked in unmarked cars around each of the plant gates. However, it erred in not attaching considerable evidentiary value to that fact, and also erred in stating that the failure of the 2,050 men to return to work should not be considered in determining whether the original defendants were guilty of violation of the injunction.
A picket need not carry a sign, nor need he undertake to use threats or force to prevent entry to the plant. The constant surveillance of the plant at all gates by the silent pickets, day and night, rain or shine, generally in four-hour shifts, unquestionably constituted picketing in violation of the injunction. NLRB v. United Furniture Workers, 337 F.2d 936 (2d Cir.1964); NLRB v. Local 182, International Brotherhood of Teamsters etc., 314 F.2d 53 (2d Cir.1962); Ex Parte Textile Workers Union of America, 264 Ala. 656, 89 So.2d 92 (1956); Note, Picketing By An Uncertified Union: The New Section 8(b) (7), 68 Yale L.J. 1393, 1397-98 (1960).
As to the five officers of the union, who were signatories to the collective bargaining contract, they averred in their answer that they had advised the strikers to return to work, yet they did not testify on this or any other issue. As responsible officers and leaders, they also were under a duty to obey the injunction and to advise the strikers to return to work. Yet the strike and picketing continued. Their failure to exculpate themselves, combined with the evidence and entire context of the facts, supports an inescapable inference that they also participated in violating the injunction and were, therefore, guilty of civil contempt.
In addition to the foregoing facts and considerations, there is in this case another significant factor. Masonite introduced into evidence the writ of injunction, *183 and offered numerous witnesses to support its charge that the original defendants had failed to obey the injunction and were in civil contempt. Appellees offered no proof to rebut this evidence. It is the general rule that introduction of a decree ordering alimony or child support payments, with proof of defendant's failure to make the payments, is sufficient to make out a prima facie case of civil contempt. Lewis v. Lewis, 213 Miss. 434, 57 So.2d 163 (1952); Vogel v. Vogel, 200 Miss. 576, 28 So.2d 217 (1946); Collins v. Collins, 171 Miss. 891, 158 So. 914 (1935); Annot., 53 A.L.R.2d 591, 618 (1957); Griffith, Mississippi Chancery Practice § 669 at 736 n. 82(b) (2d ed. 1950). Parenthetically, in criminal contempt proceedings, a prima facie case is not made out by mere proof of defendant's failure to pay alimony as ordered, but it must also be shown that he was able to pay it. Evans v. Evans, 193 Miss. 468, 9 So.2d 641 (1942). On this appeal we are dealing with civil contempt. When the writ of injunction was introduced in evidence, and the evidence reflected that defendants had violated it, a prima facie case was made out. It then devolved on defendants to purge themselves of civil contempt by proving that they had complied with the injunction. This they did not do. Ramsay v. Ramsay, 125 Miss. 185, 87 So. 491, 14 A.L.R. 712 (1921), suggestion of error sustained on other grounds, 125 Miss. 715, 88 So. 280, 14 A.L.R. 716 (1921).
Appellees assert, for the first time on this appeal, that the injunction upon which the contempt charges were based is void. It is argued that the state court had no jurisdiction to entertain the suit since by the Norris-LaGuardia and National Labor Relations Acts the Federal government preempted the field. We do not accede to this argument; however, the sole issue in this contempt proceeding was, as stated by the trial court, whether the defendants had violated the injunction. An injunction duly issuing out of a court of general jurisdiction with equity powers must be obeyed by the parties thereto, however erroneous the action of the court may be. The chancery court and a judge of this Court have general jurisdiction to issue injunctions in equity. Moreover, this contempt proceeding was not attacked in the trial court on the ground of Federal preemption. Appellees' counsel during the trial conceded in effect that the only question was "whether that injunction has been disobeyed."
The person who disobeys the order of a court of general jurisdiction does so at his peril. It is no answer that the order was improvidently or erroneously granted. Griffith, Mississippi Chancery Practice § 668 (2d ed. 1950). If a party could disobey a decree by a court of general jurisdiction, and defend on the ground that in his opinion the decree was erroneous, appellees would be constitutionally free to ignore all of the procedures of the law and respect for judicial process. Appellees could not bypass orderly judicial review of the injunction by disobeying it. Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); Howat v. State of Kansas, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1922). Accordingly, on this appeal we do not reach or consider the issue of whether a state court may properly grant injunctive relief against a union's violation of a no-strike clause. Moreover, on the limited remand of this case, that will not be an issue for the chancery court in the enforcement of the judgment of this Court that the original appellees are in civil contempt of court for violation of the injunction.
The bill for injunction named as parties the International, the Local, and five individuals who were signatories to the collective bargaining agreement. The petition for contempt in Charge number 6 averred that approximately fifty additional named individuals "are officers, shop committeemen, negotiating committeemen, or shop stewards" of the local union; and that each of them had notice of the injunction, none had returned to work, and they were continuing to engage in a strike and inducing complainant's *184 employees to strike. Appellant does not point out the places in this lengthy record wherein there is any testimony connecting these fifty additional defendants with civil contempt of the court. Appellant does not show that they were picketing the plant, but apparently relies simply on the fact that they have not returned to work. The evidence is insufficient to support a charge of civil contempt against them. The chancery court was warranted in dismissing the petition to that extent. Its decree is therefore affirmed in part, as to Charge number 6 of the petition for contempt and the fifty individual defendants named in its exhibit.
On the other hand, the chancery court was manifestly wrong in holding that the International, the Local, and the five individual defendants who were signatories to the collective bargaining agreement, were not in civil contempt of court. Accordingly, the decree holding otherwise is reversed, and judgment is rendered here adjudicating that the International Woodworkers of America, AFL-CIO, and Local 5-443, International Woodworkers of America, AFL-CIO, and J.D. Jolley, Chester Ishee, John A. West, Ben Johnson, and Thomas E. Lindsey wilfully and contumaciously violated the writ of injunction served upon them on May 2, 1967. The cause is remanded to the chancery court for the limited purpose of expeditious enforcement of this judgment and the injunction against these appellees by a coercive decree adequate for that purpose.
Appeal as to criminal contempt dismissed. As to civil contempt: affirmed in part as to fifty individual appellees named in charge 6; as to the International and Local unions, and J.D. Jolley, Chester Ishee, John A. West, Ben Johnson, and Thomas E. Lindsey, the decree is reversed, judgment rendered here for appellant, and cause remanded for limited purpose of enforcement of the judgment and the injunction.
All Justices concur.