548 So.2d 412 (1989)
COMMON CAUSE OF MISSISSIPPI, Roberta Madden, Rims Barber, Barbara Powell, John Guest and Mississippi Publisher's Corporation
v.
George SMITH, Roger Stewart and Hershel Wilbourn.
No. 07-58176.
Supreme Court of Mississippi.
July 26, 1989.
Charles H. Ramberg, Elizabeth Gilchrist, Thomas W. Tardy, III, Leonard D. Van Slyke, Jr., Thomas, Price, Alston, Jones & Davis, Jackson, for appellants.
Michael S. Allred, Satterfield & Allred, Jackson, for appellees.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
On February 25, 1982, Common Cause of Mississippi, et al., sued the Hinds County Board of Supervisors, and this suit resulted in the entry of a Consent Decree enjoining the Board from violating the Open Meetings *413 Act, § 25-41-1, et seq., Miss. Code Ann. (Supp. 1987). The Consent Decree outlined certain conduct and procedures to be followed by the Board, post hac. This decree was entered on May 10, 1982.
On November 14, 1983, Common Cause petitioned the Hinds County Chancery Court to cite the Board of Supervisors for contempt of the Consent Decree, and Mississippi Publishers Corporation intervened as a party plaintiff.
On August 18, 1986, the chancellor entered his Findings of Fact and Conclusions of Law which found the Board in contempt for violating the Consent Decree and/or the Open Meetings Act. The chancellor imposed definite jail terms and fines on the defendants, but suspended the imposition of that punishment unless and until "future violations are charged (and proven) ..." The defendants were also sentenced to perform a designated amount of community service work. The chancellor then vacated the prior Consent Decree, and ultimately incorporated the August 18th Findings of Fact and Conclusions of Law into a final judgment which became the new benchmark by which the conduct of the Hinds County Board of Supervisors would be measured.
The Hinds County Board of Supervisors held a meeting on Thursday, August 21, 1986, beginning at 9:30 a.m. All five supervisors were present at this meeting. At approximately 10:30 a.m., the Board went into executive session on a "personnel matter." Having opposed the motion to go into executive session, Supervisors Thompson and Bryan did not attend. Following the executive session, the meeting recessed and reconvened at 11:00 a.m. for a "budget hearing." The 11:00 a.m. hearing was attended by Supervisors Smith, Bryan and Thompson.
During this meeting, the supervisors requested some budget figures from Pat Griffin, the City Comptroller. He stated that it would take a few days for him to gather the requested information. It was determined, therefore, that another meeting would need to be held on "Monday or possibly Tuesday." This announcement was made in the presence of at least one newspaper reporter, but a specific time, date and place was not immediately set. The 11:00 a.m. hearing was then recessed.
Following recess of the 11:00 a.m. meeting on the 21st, Supervisors Bryan and Thompson departed while Board President Smith remained to confer with Comptroller Griffin. Smith and Griffin agreed, inter se, that the next meeting would be held at 1:30 p.m. on Monday, August 25, 1986. No other member of the public was present, and the later prepared minutes of the August 21st meeting to the contrary, no advance public notice of this August 25th meeting was given. Supervisors Wilbourn, Stewart and Thompson got notice of this meeting only after receiving phone calls from Comptroller Griffin on August 22nd or August 25th.
The Budget Hearing convened on August 25, 1986, at 1:30 p.m., in the Board of Supervisors' Room, Chancery Court Building, Hinds County. The Board heard requests from the Jackson-Hinds Library System and the Jackson Chamber of Commerce. No member of the general public was present at this meeting, and the library system representative discovered the meeting only after telephoning the comptroller on the morning of August 25th. Several important county employees were also noticeably absent, among them Pete McGee, Chancery Clerk, Board Secretary Winnie Dilmore, Joe Moss, then County Attorney, and Diane Butler, the stenographer who usually takes the minutes.
Two days later, on August 27, 1986, Common Cause, et al., filed its second Petition for Contempt, this time against Supervisors Smith, Stewart and Wilbourn because of their failure to properly notice and take minutes of the August 25th meeting. Supervisors Thompson and Bryan were not sued for violating the August 18th Order for the following reasons: (1) Supervisor Thompson refused to stay for the entire August 25th meeting because he felt it was "framed"; (2) Mr. Bryan's only participation was to prevent a vote from being taken on an appropriation matter raised by Supervisor Stewart; (3) Supervisors *414 Thompson and Bryan voted against approval of the minutes from the August 21st meeting; and (4) Supervisors Thompson and Bryan have continually evidenced their intent to comply with the Open Meetings Act.
As previously alluded to, the minutes from the August 21, 1986, meeting were prepared well after the 21st, and incorrectly reflect that, before recess, it was decided that the next meeting would be held at "1:30 p.m. Monday, August 25, 1986." This recital was added ex post facto because the specific time and date was set by Supervisor Smith and Comptroller Griffin, inter se, after everyone had left the August 21st meeting. In fact, the August 21st minutes were not prepared until after the August 25th meeting, and were not presented for Board approval until a September 2nd, 1986, meeting.
In their Petition for Contempt against Smith, Stewart and Wilbourn, Common Cause requested, inter alia, that the chancellor vacate the suspension of the previously imposed jail terms and fines.
The merits of Common Cause's second Petition for Contempt were heard on September 5, 1986. At the outset, the Chancellor entered a Final Judgment on the prior contempt action, nunc pro tunc, as of August 18, 1986. This Final Judgment incorporated by reference the Findings of Fact and Conclusions of Law entered on August 18, 1986. At the close of the plaintiffs' case-in-chief, the defendants moved for an involuntary dismissal pursuant to Rule 41, Miss.R.Civ.P. The chancellor promptly granted the aforementioned Motion, and dismissed the plaintiffs' complaint with prejudice. From that decision, the plaintiffs have timely appealed to this Court.

DISCUSSION
Our discussion begins and ends with the jurisdictional question which, while not fully argued by the parties, appears on the face of this appeal. Subject matter jurisdiction, which is succinctly defined as the authority of a court to hear and decide a particular case, depends on the type of case at issue, and we have the primary duty, sua sponte, to determine whether a particular case lies within our jurisdiction. Marx v. Truck Renting & Leasing Ass'n., Inc., 520 So.2d 1333, 1338 (Miss. 1987); Cotton v. Veterans Cab Co., Inc., 344 So.2d 730, 731 (Miss. 1977); Byrd v. Sinclair Oil & Refining Co., 240 So.2d 623 (Miss. 1970). It is important in addressing this question to keep in mind that cases are generally classified jurisdictionally according to "the nature of the primary right asserted or the remedy sought." Marx, 520 So.2d at 1338.
Against this backdrop we consider first the applicable jurisdictional provisions. The outer limit of our appellate jurisdiction is set by our Constitution. The constitutional mandate provides that this Court "shall exercise no jurisdiction on matters other than those specifically provided by this Constitution or by general law." Miss. Const. of 1890, art. 6, § 146, as amended. Drawing on this provision, our legislature implemented its command and codified it in our general laws as follows:

The supreme court shall have such jurisdiction as properly belongs to a court of appeals, and shall hear and determine all manner of pleas, plaints, motions, causes, and controversies, civil and criminal, which are now pending therein, or which may be brought before it, and which shall be cognizable in said court; but a case shall not be removed into said court until after final judgment in the court below, except in cases particularly provided for by law; and the supreme court may grant new trials and correct errors of the circuit court in granting or refusing the same.
Miss. Code Ann., § 9-3-9 (Supp. 1988) (Emphasis added)
To this end, we have long recognized that if there is no statute supplying the right to appeal to this Court, then the right does not exist. Jackson v. Gordon, 194 Miss. 268, 273, 11 So.2d 901, 902 (1943).
A person convicted of criminal or civil contempt may, of course, appeal to this Court. Miss. Code Ann., §§ 11-51-11, 11-51-12 (Supp. 1988). Also, a plaintiff in a civil contempt case may appeal by authority *415 of Miss. Code Ann., § 11-51-3 (1972), which authorizes appeals from final judgments in civil cases. There is no statute authorizing an appeal by the petitioner when a trial court has dismissed a petition for criminal contempt. Plaintiffs' counsel suggests that an appeal from dismissal of a petition for criminal contempt lies under Miss. Code Ann., § 99-35-103(b) (1972). However, any reliance on that statute is misplaced. The plain language of the statute limits its application to the "state or any municipal corporation" who "may prosecute an appeal from a judgment of the circuit court in a criminal cause ..." (Emphasis added).
Furthermore, the petition of Common Cause, et al., was dismissed by the chancery court because of insufficient evidence pursuant to Miss.R.Civ.P. 41(b). The cases interpreting § 99-35-103(b) have consistently held that appeals thereunder are not allowed from dismissals based on insufficiency of evidence. Masonite Corporation v. International Woodworkers, 206 So.2d 171, 178 (Miss. 1967); State v. Correro, 231 Miss. 155, 94 So.2d 911 (1957); State v. Wingo, 221 Miss. 542, 73 So.2d 107 (1954); State v. Sisk, 209 Miss. 174, 46 So.2d 191 (1950); State v. Adams, 123 Miss. 514, 86 So. 337 (1920).
Thus, Common Cause's right to appeal to this Court, and consequently our jurisdiction to entertain the appeal, turns on the nature of the contempt action at issue. If it is civil, we have jurisdiction and may proceed to the merits of the case. If it is a criminal contempt, the appellants have no standing to appeal the dismissal of their petition by the chancellor. Masonite Corporation v. International Woodworkers, 206 So.2d 171 (Miss. 1967). In order to determine the nature of the contempt action at issue, we apply the applicable law to the "well pleaded allegations of the complaint which, for jurisdictional purposes, are taken as true." Marx, 520 So.2d at 1339.
The present case bears significant resemblance to Masonite, supra. Masonite filed a petition to have International Woodworkers, et al., adjudged in contempt for past violations of an injunction which restrained them from picketing at the Masonite plant. Id. at 173. The petition charged that the actions of the defendants constituted willful contempt of court. Id. at 176. At the hearing, on motion of the defendants, the chancery court dismissed the petition for failure of Masonite to sustain its burden of proof. Id. at 177.
This Court held that Masonite could "not appeal from the acquittal of appellees on criminal contempt charges ..." Id. at 173. As the court noted, the common law did not recognize any right to appeal from a contempt action in the trial court. Id. at 177. Instead, such appeals must be allowed by statute, if at all. Jackson v. Gordon, supra; see Miss. Const. of 1890, art. 6, § 146, as amended.
A determining factor in classifying a contempt action as civil or criminal is "the purpose for which the power is exercised." Masonite, 206 So.2d at 178. Stated differently, "what is the primary purpose of the suit?" Id. at 179. If the primary purpose of this suit is to enforce the rights of private litigants, or if the penalty is to enforce compliance with a court order, then the contempt is civil. In re Stewart, 571 F.2d 958, 963 (5th Cir.1978); Masonite, 206 So.2d at 179; Griffith, Mississippi Chancery Practice, § 666 (2d Ed. 1950). In civil contempt cases, the contemnor can discharge the contempt by "paying the costs and expenses and doing what he had previously refused to do." Griffith, supra. In other words, "he carries the keys of his prison in his own pocket." Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797, 806 (1911), quoting In re Nevitt, 117 F. 448, 461 (8th Cir.1902); accord Hicks v. Feiock, 485 U.S. 624, ___, 108 S.Ct. 1423, 1430, 99 L.Ed.2d 721, 732 (1988).
Criminal contempt actions, on the other hand, are prosecuted to "vindicate the authority of the court." Hicks, 485 U.S. at ___, 108 S.Ct. at 1429, 99 L.Ed.2d at 731; Gompers, 221 U.S. at 442, 31 S.Ct. at 498, 55 L.Ed. at 806. The penalty is designed to punish the defendant for disobedience to the court's order; the punishment *416 is for past offenses and "does not terminate upon compliance with a court order." Griffith, at § 666; In re Stewart, 571 F.2d at 963. Where the relief provided is by fine, it is punitive when it is paid to the court as opposed to the complainant; furthermore, the relief is punitive where the sentence of imprisonment is "for a definite period, the defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense." Hicks, 485 U.S. at ___, 108 S.Ct. at 1429, 99 L.Ed.2d at 731; Gompers, 221 U.S. at 442, 31 S.Ct. at 498, 55 L.Ed. at 806.
The distinctions between civil and criminal contempt have been consistently followed. In civil contempt cases, the punishment is conditional in nature because the defendant "can end the sentence and discharge himself at any moment by doing what he has previously refused to do." Hicks, 485 U.S. at ___, 108 S.Ct. at 1430, 99 L.Ed.2d at 732; Gompers, supra. In criminal contempt cases, the nature of the punishment is unconditional because the relief "cannot undo or remedy what has been done or afford any compensation and the defendant cannot shorten the term by promising not to repeat the offense." Id.; accord, Shillitani v. U.S., 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); Penfield Co. v. SEC, 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117 (1947). From an examination of the petition and court orders in this case, it becomes abundantly clear that the contempt petition at issue is criminal in nature. Here, as in Gompers, "the alleged contempt did not consist in the defendants refusing to do any affirmative act required, but rather in doing that which had been prohibited." 221 U.S. at 443-44, 31 S.Ct. at 499, 55 L.Ed. at 807. This conclusion is borne out by the plaintiffs' petition which charges the defendants with prior acts which "constitute willful contempt of ... court." The petition does not charge the defendants with presently "refusing to do" what the court required.
The "nature of the ... remedy sought" by the plaintiffs removes any doubt about the criminal nature of the action, and furnishes the only answer to the jurisdiction question. See Marx, 520 So.2d at 1338. The petition of Common Cause recites that the prior acts of the defendants justify an increase in the previously imposed sanctions "in order to deter said defendants from further violations ..." (Emphasis added). The United States Supreme Court has recognized that "a criminal contempt proceeding would be characterized by the imposition of an unconditional sentence for punishment or deterrence." Shillitani v. U.S., 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627, note 5 (1966) (Emphasis added). The plaintiffs' request seeks to impose "punishment for the completed act of disobedience." Gompers, 221 U.S. at 442-43, 31 S.Ct. at 498, 55 L.Ed. at 806. Similarly, the criminal portion of Masonite's petition for contempt, being charge 9, averred that the defendants had previously engaged in prohibited acts in violation of an injunction. Masonite, 206 So.2d at 176. Here, as in Masonite, no amount of imprisonment could "undo or remedy" what has been done. Gompers, 221 U.S. at 442, 31 S.Ct. at 498, 55 L.Ed. at 806.
Furthermore, the previously imposed sanctions which Common Cause, et al., seeks to have increased are undoubtedly criminal penalties. This fact was recognized recently by this Court in the companion to this case. Hinds County Board of Supervisors, et al., v. Common Cause, et al., 551 So.2d 107, 120, 121, 123 (1989). In a prior action, after finding these defendant to be "in civil contempt" of court, the trial judge ordered each defendant herein to serve a definite term in jail (30 days), pay a specific fine ($500.00), and perform a certain amount of community service. As authority to so "punish each defendant," the court relied on Miss. Code Ann., § 9-5-87 (1972). This code section is a criminal contempt statute, plain and simple. Jones v. Hargrove, 516 So.2d 1354, 1357 (Miss. 1987), quoting Evans v. Evans, 193 Miss. 468, 472, 9 So.2d 641 (1942).
It is also irrelevant that the judge suspended the payment of fines and serving of jail sentences. In Hicks v. Feiock, supra, the court addressed what effect, if any, the *417 suspension of otherwise criminal penalties has on the determination of whether a contempt action is civil or criminal. In clarifying what a previous court meant when it defined a civil sentence as one which "conditions release upon the contemnor's willingness to [comply with the order]," the Hicks court stated:
In these passages from Shillitani, the Court clearly indicated that when it spoke of a court conditioning release upon the contemnor's willingness to comply, it did not mean simply release from physical confinement, but release from the imposition of any sentence that would otherwise be determinate. The critical feature that determines whether the remedy is civil or criminal in nature is not when or whether the contemnor is physically required to set foot in a jail but whether the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order. It follows that the remedy in this case is not rendered civil in nature merely by suspending respondent's sentence and placing him on probation (with its attendant disabilities, see n. 11 infra).
Hicks, 485 U.S. at ___, 108 S.Ct. at 1431, 99 L.Ed.2d at 733, n. 7. (Emphasis in original)
Continuing, the court stated:
And certainly the fact that a contemnor has his sentence suspended and is placed on probation cannot be decisive in defining the civil or criminal nature of the relief, for many convicted criminals are treated in exactly this manner for the purpose (among others) of influencing their behavior. What is true of the respondent in this case is also true of any such convicted criminal: as long as he meets the conditions of his informal probation, he will never enter the jail. Nonetheless, if the sentence is a determinate one, then the punishment is criminal in nature,
Hicks, 485 U.S. at ___, 108 S.Ct. at 1432, 99 L.Ed.2d at 735.
In Hicks, defendant was sentenced to 25 days in jail, but his jail sentence was suspended and he was placed on probation for three years. 485 U.S. at ___, 108 S.Ct. at 1433, 99 L.Ed.2d at 736. In explaining why this relief, standing alone, would be criminal in nature, the Court stated:
That a determinate sentence is suspended and the contemnor put on probation does not make the remedy civil in nature, for a suspended sentence, without more, remains a determinate sentence, and a fixed term of probation is itself a punishment that is criminal in nature. A suspended sentence with a term of probation is not equivalent to a conditional sentence that would allow the contemnor to avoid or purge these sanctions. A determinate term of probation puts the contemnor under numerous disabilities that he cannot escape by complying with the dictates of the prior orders, such as: any conditions of probation that the court judges to be reasonable and necessary may be imposed; the term of probation may be revoked and the original sentence (including incarceration) may be reimposed at any time for a variety of reasons without all the safeguards that are ordinarily afforded in criminal proceedings; and the contemnor's probationary status could affect other proceedings against him that may arise in the future (for example, this fact might influence the sentencing determination made in a criminal prosecution for some wholly independent offense).
485 U.S. at ___, 108 S.Ct. at 1433-34, 99 L.Ed.2d at 736, n. 11.
These supervisors find themselves in a similar strait. The lower court essentially placed them on informal probation for the remainder of their days in office as supervisors. In addition to the "attendant disabilities" of probation, the suspension of the original sentences stands to be lifted and punishment reimposed at any time if a violation is charged and proven. The sentences which stand to be reimposed are unequivocally determinate.
The petition at issue seeks not only to vacate the previous suspensions, but to impose added sanctions "to deter further violations *418 ..." Consequently, the petition at issue seeks criminal relief in the form of a "penalty that [is] unconditional and not subject to being lifted if the defendants purged themselves." Stewart, 571 F.2d at 964. Here, as in Stewart, the "penalty was meant to punish defiance of the court and deter similar actions." Id. (Emphasis added). When Common Cause, et al., filed their second petition to have the defendants adjudicated in contempt, and thereupon fined and sentenced to fixed jail terms, only incidental relief would flow to the complainant. See Gompers, 221 U.S. at 444, 31 S.Ct. at 499, 55 L.Ed. at 807. As was stated in Hicks:
It is true that either form of [punishment] has also an incidental effect. For if the case is civil and the punishment is purely remedial, there is also a vindication of the court's authority. On the other hand, if the proceeding is for criminal contempt and the [punishment] is solely punitive, to vindicate the authority of the law, the complainant may also derive some incidental benefit from the fact that such punishment tends to prevent a repetition of the disobedience. But such indirect consequences will not change [punishment] which is merely coercive and remedial, into that which is solely punitive in character, or vice versa.
485 U.S. at ___, 108 S.Ct. at 1431-32, 99 L.Ed.2d at 732, quoting Gompers, 221 U.S. at 443, 31 S.Ct. at 498-99, 55 L.Ed. at 806.
The contempt proceeding brought against these defendants in this cause is criminal in nature and our jurisdiction does not vest because the "primary right asserted" is a right to vindicate the authority of the court due to alleged past acts of disobedience to a court order. Marx, 520 So.2d at 1338. Vindication is the "primary purpose of the suit." Masonite, 206 So.2d at 179. Furthermore, the "remedy sought" is a punitive one designed to deter similar conduct in the future. Marx, 520 So.2d at 1338; Shillitani, 384 U.S. at 370, 86 S.Ct. at 1535, 16 L.Ed.2d at 627, note 5. Consequently, this Court has no subject matter jurisdiction to entertain an appeal from the lower court's dismissal of the criminal contempt charges against the defendants. Masonite Corporation v. International Woodworkers, et al., 206 So.2d 171 (Miss. 1967). This appeal must, therefore, be dismissed.
In closing, we are not unmindful that the decree which formed the basis for this contempt action has recently been held to be of no further force and effect. Henceforth, the original consent decree is to resume and remain in effect until the need for an injunction dissipates because in the companion case, Hinds County Board of Supervisors, et al. v. Common Cause, et al., supra, this Court held that the original consent decree entered on May 10, 1982, should never have been set aside and replaced by the final judgment of September 5, 1986, entered nunc pro tunc as of August 18, 1986. 551 So.2d at 125.
However, this point in no way changes the disposition we make in the present case because the validity of the decree at issue is not a proper subject of inquiry on this appeal. The defendant's conduct was properly measured by the terms of the decree at issue, and orderly judicial review of this appeal which arose from alleged violations of that decree cannot be bypassed on account of our having subsequently voided the decree. Until set aside by this Court, and for purposes of this appeal, the decree of August 18, 1986, was presumptively valid. Cf. Masonite, 206 So.2d at 183.
CAUSE DISMISSED FOR LACK OF JURISDICTION.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON and ANDERSON, JJ., concur.
PITTMAN and BLASS, JJ., not participating.