# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CA-01217-SCT

### *IN RE: ALI M. SHAMSIDDEEN*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2021 |
| TRIAL JUDGE: | HON. ELEANOR JOHNSON PETERSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | ALI M. SHAMSIDDEEN (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CASEY B. FARMER |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 03/09/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     Attorney Ali Muhammad Shamsiddeen appeals the trial court's Order of Contempt and Order Denying Motion for Recusal.  This Court finds no error and affirms.

## FACTS AND PROCEDURAL HISTORY

¶2.     Michael Sorrell was convicted of one count of first degree murder and one count of felon in possession of a firearm.  *Sorrell v. State*, 284 So. 3d 765, 766 (Miss. Ct. App. 2019).  Sorrell was sentenced as a habitual offender to life imprisonment on the murder conviction and ten years on the possession conviction.  *Id.* at 766-67.  On appeal, the Mississippi Court of Appeals reversed Sorrell's conviction and remanded the case for a new trial.  *Id.* at 767.

¶3.     After numerous continuances, Sorrell's new trial was scheduled for April 5, 2021.  On the morning of trial, Sorrell's then-counsel, Kevin Camp, failed to appear, and a show cause order was issued.  Camp was terminated as defense counsel.

¶4. On April 13, Shamsiddeen entered an appearance as counsel for Sorrell. By agreement of all parties, the trial was rescheduled for September 27. The trial court advised that no further continuances would be granted and that the case would proceed to trial on September 27. An order setting the case for trial on September 27 was entered April 16.

¶5. On August 18, Shamsiddeen moved ore tenus for a continuance. Shamsiddeen's request was denied. On August 31, Shamsiddeen filed a motion to continue trial. At the pretrial motion hearing on September 1, Shamsiddeen reasserted his motion to continue. The trial court denied the motion. The trial court explained that this case "was ready for trial in April when either [Camp] was fired or abandoned his representation of [Sorrell]" and that "this setting nearly five (5) months later was specifically set after discussion with both the State and defense."

¶6. Beginning September 14, multiple subpoenas were issued by the State to various witnesses in anticipation of trial on September 27.

¶7. On September 21, Shamsiddeen contacted the court administrator and advised that he had the coronavirus[1] and would not be able to appear at the pretrial conference scheduled for September 22. Shamsiddeen was advised that he could participate virtually in the pretrial conference and would be provided a link for that participation.[2] Shamsiddeen was instructed to provide to the trial court documentation "from a healthcare provider that counsel [wa]s

---

[1] Shamsiddeen asserts he never stated that he had the coronavirus but instead advised that he had "come in direct contact with a City of Jackson Municipal Court administrator who had been diagnosed with COVID-19 and was himself displaying symptoms."

[2] Shamsiddeen acknowledged receipt of the link.

2

infected with the coronavirus and that he [wa]s symptomatic not asymptomatic."

¶8.    On the morning of September 22, Shamsiddeen did not appear in person or virtually at the pretrial conference. Later that morning, Shamsiddeen emailed the court administrator a statement from a medical provider. The medical statement, dated September 21, did not include a diagnosis or confirm any medical condition. Instead, the medical statement listed the nature of the illness or injury as "medical" and noted that Shamsiddeen would "be able to return to work/school on 10-11-21." After the pretrial conference, the trial court entered an order denying Shamsiddeen's motion to continue trial filed August 31.

¶9.    On September 24, the Friday before trial, the trial court sent both counsel an email regarding the status of the trial. The email stated,

> To counsel for the State and Defense:
>
> The Court was notified two (2) days ago that defense counsel has the coronavirus. The Court requested that defense counsel provide the court with confirmation from a healthcare provider that counsel is infected with the coronavirus and that he is symptomatic not asymptomatic. The Court has not received the confirmation requested. Although counsel provided a medical excuse it did not confirm any medical condition but only stated he should be on leave until October 11th, 2021.
>
> The Court does not accept this information as confirmation that counsel has the coronavirus and as such the case will proceed on Monday, September 27th, 2021. Defense counsel has until noon today to produce confirming medical documentation to the court so that the court may release prospective jurors for Monday. If the documentation is not produced all parties should be prepared to proceed with jury selection Monday at 1:00 p.m. in courtroom 2.

Shamsiddeen did not respond to the email or provide the requested documentation.

¶10.    On Sunday, September 26, the day before trial, Shamsiddeen sent the following email to the trial court, which we repeat, verbatim:

3

To Honorable judge E.

This email is in response to the latest communication from this court concerning my quarantine. I supplied as noted by this court, the order from my doctor about my medical release until my quarantine is over, which is indicated as October 11, 2021. The doctors [sic] orders falls within the guidelines of HIPPA regulations. As should be noted, a doctor cannot divulge a patients [sic] illness or medical records to be broadcast to the world. However, I will for further clarification, for this court, have my doctor add quarantine to his order. The doctors [sic] concern is not only for my health but for the welfare of the general public who may come into contact with me, which is his responsibility. The status of my illness is private and primarily the doctors [sic] concern. The doctor has determined that my exposure to the general public may be hazardous and possibly even deadly for those who may come into contact with me. With that being said, I will abide by my doctors [sic] orders and remain quarantined until my doctor releases me.

Sincerely and with all due respect

Ali Shamsiddeen MSB101013

¶11.    On September 27, the State and Sorrell appeared in court for trial.  Shamsiddeen did not appear.  When asked by the trial court if he had counsel, Sorrell stated, "No, ma'am. . . . Only thing he told me, he was in . . . medical quarantine, something like that. . . . And he ain't been answering so. . . ."

¶12.    The trial court ultimately released the jury panels.  Before the jury panels were released, Shamsiddeen had someone from the City of Jackson's legal department hand deliver a medical statement.  The medical statement, dated September 27, is identical to the medical statement dated September 21, with the exception of the word "quarantine" added to the nature of the illness or injury.[3]

---

[3] The medical statement dated September 21 listed the nature of the illness or injury as "medical."  The medical statement dated September 27 listed the nature of the illness or injury as "medical quarantine."

4

¶13. The trial court made a record of the events that had transpired and stated, "once a person brings in their diagnosis or medical history into play as an excuse before this Court, they need to produce what is ordered and directed by the Court. The Court's website has sufficient information for any attorney who knows the policies and practices of this Court." The trial court further stated,

> Mr. Shamsiddeen has not appeared today. He was directed as all counsel w[ere] to be here at one o'clock today. As such, Mr. Shamsiddeen shall be assessed the costs for the jurors, all jurors, who are subpoenaed to appear today for jury duty that could have been excused had he complied with the Court's notice. . . . He will further pay any cost of any witnesses that were subpoenaed by the State of Mississippi for this matter who are having to be excused today. This case will be continued to a date in November and there will be no further continuances.

¶14. The trial court entered an Order of Contempt finding Shamsiddeen in direct criminal contempt of court for his failure to appear at trial. Shamsiddeen was assessed a $100 fine, $4,893.84 in costs for the jurors, and $625 in costs for the State's witnesses.

¶15. Shamsiddeen filed a motion for recusal and asked the trial judge to recuse from the case. The trial court found no merit to Shamsiddeen's motion and denied the motion for recusal. The court noted that Shamsiddeen had mischaracterized the events but that "[d]espite his efforts, counsel's mischaracterizations d[id] not negate the facts that he failed to appear, failed to communicate and failed to comply with an Order of the Court."

¶16. Shamsiddeen timely appealed to this Court. On appeal, Shamsiddeen argues the trial court erred (1) by finding him in direct criminal contempt and (2) by denying his motion for recusal.

**DISCUSSION**

*I.    Contempt*

¶17.    "[W]hen [an] appeal involves a conviction of criminal contempt[,]" "this Court proceeds *ab initio* to determine whether the record proves the appellant guilty of contempt beyond a reasonable doubt." ***Purvis v. Purvis***, 657 So. 2d 794, 797 (Miss. 1994) (citing ***Lamar v. State***, 607 So. 2d 129, 130 (Miss. 1992)). "The burden of proof to establish that contempt has been committed is on the party asserting that it has. In a proceeding for criminal contempt, evidence of guilt must be established beyond a reasonable doubt." ***Brame v. State***, 755 So. 2d 1090, 1093 (Miss. 2000) (citations omitted) (quoting ***Terry v. State***, 718 So. 2d 1097, 1103 (Miss. 1998)).

¶18.    "The imposition of punishment for contempt of court is within the discretion of the trial court." ***Wyssbrod v. Wittjen***, 798 So. 2d 352, 359 (Miss. 2001) (citing ***Gebetsberger v. East***, 627 So. 2d 823, 826 (Miss. 1993)). "Mississippi law clearly supports a court's power to sanction an attorney or party for violation of court orders, and, more specifically, for failure to appear as ordered by the court." ***Id.*** (citing ***Alviers v. City of Bay St. Louis***, 576 So. 2d 1256 (Miss. 1991)).

¶19.    Mississippi Rule of Criminal Procedure 32, which "applies to both civil and criminal contempt arising in a criminal action," discusses and defines contempt. MRCrP 32.1(a). Under Rule 32, contempt is classified as either indirect or direct and criminal or civil. MRCrP 32.1. "'Indirect contempt,' also known as 'constructive contempt,' means any contempt other than a direct contempt." MRCrP 32.1(b). "'Direct contempt' means contempt committed: (1) in the presence of the judge presiding in court; or (2) so near to the

6

judge as to interrupt the court's proceedings." MRCrP 32.1(c). "'Criminal contempt' means

> (1) misconduct of a person that obstructs the administration of justice and that is committed either in the presence of the judge presiding in court or so near thereto as to interrupt its proceedings;

> (2) willful disobedience or resistance of any person to a court's lawful writ, subpoena, process, order, rule, or command, where the primary purpose of the finding of contempt is to punish the contemnor; or

> (3) any other willfully contumacious conduct which obstructs the administration of justice, or which lessens the dignity and authority of the court.

MRCrP 32.1(d). "'Civil contempt' means willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule or command that by its nature is still capable of being complied therewith." MRCrP 32.1(e).

¶20. "The first question is whether the contempt is civil or criminal in nature, which we determine by looking at the primary purpose of the contempt order." *In re Smith*, 926 So. 2d 878, 887 (Miss. 2006) (citing *Cooper Tire & Rubber Co. v. McGill*, 890 So. 2d 859, 868 (Miss. 2004)).

> If the primary purpose is to enforce the rights of private party litigants or to enforce compliance with a court order, the contempt is civil. [*Common Cause of Miss. v. Smith*, 548 So. 2d 412, 415 (Miss. 1989)]. One may be jailed or fined for civil contempt, however, the contemnor must be relieved of the penalty when he performs the required act. *Hinds Cnty. Bd. of Supervisors v. Common Cause of Miss.*, 551 So. 2d 107, 120 (Miss. 1989). Criminal contempt penalties are designed to punish for past offenses and they do not end when the contemnor has complied with the court order. *Smith*, 548 So. 2d at 415-16.

> Conduct directed against the court's dignity and authority is criminal contempt. *Lawson v. State*, 573 So. 2d 684, 686 (Miss. 1990). It involves an act "which tends to bring the court into disrepute or disrespect." *Lawson*, 573 So. 2d at 686 (quoting *Cook v. State*, 483 So. 2d 371, 374 (Miss. 1986).

7

> Conduct amounting to criminal contempt must be directed against the court or against a judge acting judicially rather than individually. *Culpepper v. State*, 516 So. 2d 485, 486 (Miss. 1987).

*Purvis*, 657 So. 2d at 796-97.

¶21. Here, the record reflects that the purpose of the trial court's order of contempt was to punish Shamsiddeen for his failure to appear at trial. Indeed, the trial court found that Shamsiddeen "refused to appear in court at the date and time scheduled for trial as ordered by this court in a case for which no continuance had been granted." The trial court sanctioned Shamsiddeen, finding that his actions were "deliberate[]" and "subversive and done to interfere with the orderly proceedings of the court." Because the purpose of the contempt order was to punish Shamsiddeen for a past offense and because the contempt penalty does not end if and when Shamsiddeen complies with the court order, the contempt is criminal in nature. *Smith*, 548 So. 2d at 415-16.

¶22. If the contempt is criminal in nature, the second step is to determine whether the contempt is direct or constructive. *Dennis v. Dennis*, 824 So. 2d 604, 608 (Miss. 2002).

> Direct criminal contempt involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice. Punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed . . . .
>
> Unlike direct contempt, constructive contempt involves actions which are committed outside the presence of the court . . . . In the case of constructive criminal contempt, we have held that defendants must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing.

*Id.* at 608-09 (alterations in original) (quoting *Moulds v. Bradley*, 791 So. 2d 220, 224-25

8

(Miss. 2001)).

¶23. In *Wyssbrod*, we noted the general rule "that ordinarily an attorney's absence is contempt outside the presence of the court because 'the contempt consists not in the absence from the courtroom but in the reasons for the attorney's presence elsewhere, and the presence elsewhere was, of course, not in the actual presence of the Court.'" *Wyssbrod*, 798 So. 2d at 360 (quoting *In re Allis*, 531 F.2d 1391, 1392 (9th Cir. 1976)). But we recognized an exception to this general rule and found that an attorney's absence may be considered direct contempt and punished without the benefit of notice and a separate hearing "when the reason for the absence or tardiness is 'known to the court.'" *Id.* (internal quotation mark omitted) (quoting *Smith v. Smith*, 145 F.3d 335, 342 (5th Cir. 1998)). "[T]his could occur because '[c]ounsel may advise the court that he will not appear for a certain reason, or he may advise the court why he was absent.'" *Id.* (internal quotation mark omitted) (quoting *Smith*, 145 F.3d at 342).

¶24. In *Wyssbrod*, the plaintiff's attorney telephoned the trial court the morning of a scheduled status conference and advised the court that he would not attend the conference as ordered. *Id.* at 361. "The court administrator informed [the attorney] that the judge expected him to attend the conference and that [the attorney's] reason for not attending the conference would not be recognized as valid by the court." *Id.* "This is distinguishable from instances where an attorney merely fails to appear, which is generally held to be constructive contempt." *Id.* "Procedural protections are provided in cases of constructive contempt because the actions constituting the contempt are not within the knowledge of the court." *Id.*

9

(citing *Varvaris v. State*, 512 So. 2d 886, 887-88 (Miss. 1987)). But because the attorney's "actions and reasons for his actions were known to the court[,]" the trial court "correctly characterized these actions as direct contempt." *Id.* "[T]o hold otherwise would encroach upon the court's inherent authority to hold a person in contempt of court for violation of court orders." *Id.* (internal quotation marks omitted) (quoting *Murrell v. State*, 655 So. 2d 881, 891 (Miss. 1995) (Pittman, J., dissenting), *disagreed with on other grounds by Dilworth v. State*, 909 So. 2d 731, 735 n.4 (Miss. 2005), *disagreed with on other grounds by Clark v. State*, 315 So. 3d 987, 1004 (Miss. 2021)).

¶25. Additionally, in *In re Hampton*, the trial court sent a letter to each party's attorney requesting the presence of both attorneys at the courthouse on August 27, 2004, for a conference. *In re Hampton*, 919 So. 2d 949, 952 (Miss. 2006). Attorney Hampton failed to appear, and the trial court was unable to get in touch with her. *Id.* The circuit clerk "revealed that she spoke with Hampton during the two weeks preceding the meeting, and Hampton informed the circuit clerk that she may or may not attend the planning conference scheduled for August 27." *Id.* The trial court determined "that Hampton's failure to attend the hearing was willful, deliberate and contumacious[,]" and it found "Hampton in direct criminal contempt of court." *Id.* at 955. On appeal, this Court affirmed. *Id.* at 956. The Court found that the *Wyssbrod* exception applied because Hampton's communication with the circuit clerk before the scheduled conference "clearly indicate[d] Hampton was aware of her obligation to attend the hearing" and further "demonstrate[d] Hampton's intention to absent herself from the hearing." *Id.* at 955.

10

¶26.    In *Donaldson v. Cotton*, the youth court judge verbally ordered Donaldson, the county

prosecutor, "to begin preparing the orders of the youth court[.]" *Donaldson v. Cotton*, 336

So. 3d 1099, 1102 (Miss. 2022).

> Donaldson responded by sending [the youth court judge] a letter in which he
> declined to follow the judge's verbal order to prepare the orders for certain
> youth court matters because he 'simply d[id] not have time nor desire[d] to do
> something that [he] d[id] not believe [was] in [his] job description as Yazoo
> County's Prosecuting Attorney.

*Id.* at 1102-03.

¶27.    After obtaining an opinion from the attorney general's office, the youth court judge

entered an order "mandating the immediate responsibility of [Donaldson] for preparation of

all youth court orders[.]" *Id.* at 1103. The judge emailed Donaldson a copy of the order and

instructed Donaldson to begin preparing the orders. *Id.* Donaldson responded to the email

and reiterated that the preparation of the orders was not his responsibility. *Id.* at 1103-04.

¶28.    When Donaldson failed to prepare the orders after multiple hearings, the youth court

judge emailed Donaldson to remind him to comply with her order. *Id.* at 1104. The next

day, "Donaldson wrote a letter to [the youth court judge] in which he again refused to abide

by her order." *Id.* As a result, the youth court judge entered an order of contempt for

Donaldson's failure and refusal to abide by her order. *Id.* Donaldson appealed the order of

contempt. *Id.* at 1105.

¶29.    On appeal, this Court declined to adopt the *Wyssbrod* exception and instead relied on

the "Court's research of other jurisdictions' case law [that] revealed that contemptuous

'[l]etters written to a judge seem uniformly to be cataloged as indirect and constructive

11

contempt at best, never direct contempt.'" *Id.* at 1111 (second alteration in original) (citing *State v. Calabretta*, No. CA-3170, 1986 WL 5512, at *3 (Ohio Ct. App. 1986)). The Court explained, "[a] judge usually cannot say with any certainty that a letter or telegram received by him purporting to be signed by a certain person was either written or sent by that person; hence such an act, if contumacious, should be classified as an indirect contempt." *Id.* (internal quotation marks omitted) (quoting *Bulcke v. Sup. Ct. of Los Angeles Cnty.*, 94 P.2d 1006, 1009 (Cal. 1939)). The Court found that the "majority of Donaldson's conduct occurred outside the Court's presence" and was therefore constructive in nature. *Id.* at 1112. Because Donaldson was not provided notice and a separate hearing, the Court vacated the contempt order and remanded the case to the trial court. *Id.*

¶30. Most recently, in *Seals v. Stanton*, this Court affirmed the trial court's finding of direct criminal contempt against two attorneys for their failure to appear. *Seals v. Stanton*, 350 So. 3d 1051, 1055 (Miss. 2022). In *Seals*, Kimberlyn Seals and her attorney Derek Hopson, Sr., agreed to a final hearing date of April 7, 2020. *Id.* at 1056. On April 2, Felecia Perkins and Jessica Ayers entered an appearance on behalf of Seals. *Id.* On April 6, one day before the scheduled hearing, Perkins and Ayers moved to continue the hearing. *Id.* Ayers also emailed the court administrator and advised that neither she nor Perkins would be present at the April 7 hearing. *Id.* The court administrator responded and informed Ayers that the chancellor found Ayers and Perkins's motion for continuance to be untimely and that the chancellor expected all parties and counsel to appear on April 7. *Id.*

¶31. On April 7, neither Seals nor her counsel appeared for the scheduled hearing. *Id.* As

12

a result, on April 8, the chancellor enter an order of contempt against Seals and her counsel for their failure to appear at the final hearing. *Id.* at 1056-57. Seals and her counsel filed a notice of appeal. *Id.* at 1057. On appeal, this Court noted *Wyssbrod* and *In re Hampton* and found as follows:

> Perkins and Ayers gave notice to the court prior to the Final Hearing that they would not appear. . . .
>
> Similar to the attorneys in *In re Hampton* and *Wyssbrod*, the email and the motion for continuance reveal that Perkins and Ayers had *awareness* of their obligation to attend the hearing and they stated their *intention* to be absent from it, disregarding the court's order. Although the email from Ayers and the motion for continuance stated that Perkins and Ayers were aware of a hearing the following day, they knew their presence as Kimberlyn's representation was required, as the email from the court administrator specifically stated that their appearance was required. The court directly expressed that it deemed their reason for being absent without merit. Like the attorneys in *In re Hampton* and *Wyssbrod*, the email from Ayers indicated that she and Perkins intended to disregard the order of the court by being absent from the hearing. The conduct of Perkins and Ayers constitutes direct criminal contempt. The chancellor did not err by summarily punishing them for their failure to appear.

*Id.* at 1061-62.

¶32. Here, like the attorneys in *Wyssbrod*, *In re Hampton*, and *Seals*, Shamsiddeen was aware of his obligation to appear at trial on September 27. Indeed, as in *Seals*, "the email and the motion for continuance reveal that [Shamsiddeen] had *awareness* of [his] obligation to attend the [trial.]" *Seals*, 350 So. 3d at 1062. But despite such awareness, Shamsiddeen "stated [his] *intention* to be absent from [trial], disregarding the court's order[s]."[4] *Id.* And

---

[4] The trial court had entered an order on April 16, 2021, setting this case for trial on September 27, 2021. Additionally, the trial court entered an order on September 22, 2021, denying Shamsiddeen's motion for continuance and reiterating that the trial would begin on September 27, 2021.

unlike in ***Donaldson***, there is no dispute that Shamsiddeen sent the email evidencing his awareness of the trial and his intention to be absent. *See **Donaldson***, 336 So. 3d at 1111 ("A judge usually cannot say with any certainty that a letter or telegram received by him purporting to be signed by a certain person was either written or sent by that person; hence such an act, if contumacious, should be classified as an indirect contempt." (internal quotation marks omitted) (quoting ***Bulcke***, 94 P.2d at 1009)).

¶33. As the trial court properly noted,

> [Shamsiddeen] was aware that the [c]ourt had denied his request for a continuance. . . . [Shamsiddeen] never formally filed a request for a continuance based on his alleged illness and only communicated with the [c]ourt [a]dministrator even though he was provided three options[:] to appear in court, file a written motion[,] or appear virtually and present his request[,] [but] none of these options were pursued by [Shamsiddeen]. . . . Shamsiddeen directly refused to appear in court at the date and time scheduled for trial as ordered by this court in a case for which no continuance had been granted.

¶34. Shamsiddeen argues he was "not willfully disobedient" and was not trying to "prevent [the] orderly administration of justice." This Court disagrees.

¶35. The record reflects that Shamsiddeen intended to disregard the trial court's orders by failing to appear at trial. "This is distinguishable from instances where an attorney merely fails to appear[.]" ***Wyssbrod***, 798 So. 2d at 361. A trial date had been set by agreement since April, and subpoenas had been issued on September 14. Shamsiddeen's email to the trial court on September 26, the day before trial, is evidence of both his awareness of the trial date and his refusal to appear: "I will abide by my doctor[']s orders and remain quarantined until my doctor releases me."

¶36. Shamsiddeen's email also belies his claim that he was not willfully disobedient. The

14

trial court instructed Shamsiddeen that he needed to provide medical documentation confirming his alleged illness in order for her to continue the trial. But Shamsiddeen refused to do so, claiming that his doctor's note fell "within the guidelines of HIPPA regulations" and that "a doctor cannot divulge a patient[']s illness or medical records to be broadcast to the world." But Shamsiddeen ignores the fact that he had already divulged his alleged illness to the trial court, and a medical professional may release relevant medical information with the patient's consent. *See* 45 C.F.R. § 164.502(a)(1)(iv).

¶37.   The dissent focuses on what the trial court ordered and not what Shamsiddeen provided. The dissent asserts the "trial court mandated a higher burden than was necessary to grant a continuance: a positive COVID-19 diagnosis." Diss. Op. ¶ 49. The dissent claims, "it was not necessary for the documentation from a physician to describe or disclose the specifics of a person's illness in order for the judge to grant a continuance." Diss. Op. ¶ 49. But the documentation provided by Shamsiddeen to the trial court was simply a work excuse with no specifics whatsoever. The dissent cites Emergency Administrative Order-21 in support of its position, but even the order states that if "*diagnosed* with any illness," the individual "shall contact the court by telephone." Diss. Op. ¶ 49 (emphasis added) (citing Emergency Admin. Order-21, No. 2021-AD-00001-SCT (Miss. Aug. 5, 2021)). Although Shamsiddeen contacted the trial court, he failed to provide any documentation of a diagnosis. Notably, even if Shamsiddeen was unable to provide the trial court with a positive COVID-19 diagnosis, he could have provided, at the very least, a doctor's note confirming what *he himself had already advised the trial court*, i.e., that he had been exposed to COVID-19 and

15

was experiencing symptoms. This would have enabled the trial court to evaluate information provided by a medical professional. But Shamsiddeen failed to provide any documentation to the trial court other than a work excuse with no further explanation. And the revised medical documentation to "quarantine" was not provided until September 27, after the trial had commenced.

¶38. The record supports the trial court's finding that Shamsiddeen was in direct criminal contempt of court. Thus, the trial court's finding of direct criminal contempt for Shamsiddeen's failure to appear at trial is affirmed.

¶39. Likewise, the trial court's imposition of sanctions also is affirmed. The trial court ordered Shamsiddeen to pay a $100 fine, and it assessed $4,893.84 as costs for the jurors and $625 as costs for the subpoenaed witnesses. While Shamsiddeen argues that the trial court abused its power by sanctioning him and that this Court should vacate the sanctions, he fails to cite any authority in support. "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." *Cork v. State*, 329 So. 3d 1183, 1190 (Miss. 2021) (internal quotation marks omitted) (quoting *Arrington v. State*, 267 So. 3d 753, 756 (Miss. 2019)).

¶40. Nevertheless, the trial court's fine was authorized by statute. *See* Miss. Code Ann. § 9-1-17 (Rev. 2019) ("The . . . circuit . . . courts . . . shall have power to fine and imprison any person guilty of contempt of the court while sitting, but the fine shall not exceed One Hundred Dollars ($100.00) for each offense, nor shall the imprisonment continue longer than thirty (30) days."). And the trial court's assessed costs were reasonable. The trial court

16

specifically found Shamsiddeen's conduct to be "deliberate[]" and "subversive and done to interfere with the orderly proceedings of the court." Accordingly, the sanctions were proper "on account of the harm [Shamsiddeen]'s absence caused." *In re Hampton*, 919 So. 2d at 958 (trial court's imposed sanctions for attorneys' fees, witness fees, and court reporter fees were proper).

## II. Recusal

¶41. "The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards and is consistent in the application." *Latham v. Latham*, 261 So. 3d 1110, 1112 (Miss. 2019) (internal quotation marks omitted) (quoting *Tubwell v. Grant*, 760 So. 2d 687, 689 (Miss. 2000)). "The Court applies a *de novo* standard when reviewing procedural issues raising questions of law." *Id.* (citing *Corr v. State*, 97 So. 3d 1211, 1213 (Miss. 2012) (applying a de novo standard of review to a contempt matter when the issue was whether the chancery court did not recuse)).

¶42. "[I]n cases of *indirect or constructive* criminal contempt, 'where the trial judge has substantial personal involvement in the prosecution, the accused contemnor must be tried by another judge.'" *Corr*, 97 So. 3d at 1215 (emphasis added) (quoting *Graves v. State*, 66 So. 3d 148, 154 (Miss. 2011)). Because Shamsiddeen's conduct constitutes *direct* criminal contempt, Shamsiddeen was not entitled to notice and a separate hearing, and the trial judge was not required to recuse. *Dennis*, 824 So. 2d at 608-09 (quoting *Moulds*, 791 So. 2d at 224-25); *Corr*, 97 So. 3d at 1215 (quoting *Graves*, 66 So. 3d at 154). Accordingly, the trial

17

court did not err by denying Shamsiddeen's motion for recusal.[5]

## CONCLUSION

¶43. The trial court's Order of Contempt and Order Denying Motion for Recusal are affirmed.

¶44. **AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶45. This is the first time this Court has interpreted Mississippi Rule of Criminal Procedure 32.1(d). Before us today is a situation in which an attorney was directed by a physician to quarantine due to his recent exposure to a dangerous, contagious disease, resulting in the attorney's inability to appear at his client's trial. The trial judge required that the attorney produce a positive COVID-19 test as a prerequisite for a continuance. We must decide whether it is necessary for an attorney or other person who is unable to appear in court because of his or her medical status to provide the judge a physician's detailed analysis of why the person cannot or should not appear. This lawyer's absence was not his own contrivance, but was the result of his compliance with the instructions of a licensed healthcare professional. With respect, I disagree with the majority's opinion that Ali M. Shamsiddeen's conduct amounted to direct criminal contempt.

---

[5] Additionally, the record reflects that Sorrell's case went to trial in November 2021, with the trial judge presiding and Shamsiddeen as counsel. Thus, any argument as to the trial judge's failure to recuse is now moot.

18

¶46. In contempt cases, the first question this Court must address "is whether the contempt is civil or criminal in nature, which we determine by looking at the primary purpose of the contempt order." *In re Smith*, 926 So. 2d 878, 887 (Miss. 2006) (citing *Cooper Tire & Rubber Co. v. McGill*, 890 So. 2d 859, 868 (Miss. 2004)). Shamsiddeen, a lawyer, was representing a client in a criminal case when the trial judge held that he was in direct criminal contempt for his failure to appear for the client's trial on September 27, 2021. Because the alleged contempt arose in a criminal action, the Mississippi Rules of Criminal Procedure apply. *See* MRCrP 32.1(a). Rule 32.1(d) defines criminal contempt as

(1) misconduct of a person that obstructs the administration of justice and that is committed either in the presence of the judge presiding in court or so near thereto as to interrupt its proceedings;

(2) willful disobedience or resistance of any person to a court's lawful writ, subpoena, process, order, rule, or command, where the primary purpose of the finding of contempt is to punish the contemnor; or

(3) any other willfully contumacious conduct which obstructs the administration of justice, or which lessens the dignity and authority of the court.

MRCrP 32.1(d). The majority finds that the contempt order is criminal in nature because the primary purpose of the order was to punish Shamsiddeen for his failure to appear for trial. Maj. Op. ¶ 21. While I agree that the primary purpose of the contempt order was to punish this attorney, I disagree that his alleged misconduct was willfully done or that it was intended to obstruct the administration of justice. I would find that Shamsiddeen's actions did not constitute criminal contempt as defined by Rule 32.1(d), and therefore were not punishable at all.

19

¶47.   While Shamsiddeen was well aware of his client's trial date, he knew also that he had been exposed to COVID-19, which resulted in his being instructed by a licensed physician to quarantine. The word *quarantine* is defined as "enforced isolation or restriction of free movement imposed to prevent a contagious disease from spreading." *Quarantine*, The American Heritage Dictionary of the English Language (1981). *Willful* is defined as "[v]oluntary and intentional, but not necessarily malicious." *Willful*, Black's Law Dictionary (7th ed. 1999). Shamsiddeen's absence from circuit court was not undertaken voluntarily, as he was ordered by a medical doctor to stay away from the public until he no longer posed a threat to others. This attorney did not intentionally choose to neglect his obligation to appear, but rather his involuntary exposure to an often-fatal and highly contagious disease rendered him unable to attend a trial, especially a jury trial, regardless of whether he actually contracted the disease himself. He provided to the court reasonable and timely notice that he would be absent, which included a physician's note.

¶48.   The majority finds that the attorney was willfully disobedient because he did not provide medical documentation that he, Shamsiddeen, actually was infected with the disease, despite his being ordered by the trial court to do so. Maj. Op. ¶ 37. Specifically, the majority asserts erroneously that Shamsiddeen "failed to provide any documentation to the trial court other than a work excuse with no further explanation" and that "the revised medical documentation to 'quarantine' was not provided until September 27, after the trial had commenced." Maj. Op. ¶ 37. But Shamsiddeen communicated repeatedly with the trial court regarding his need to be excused from court, which included providing medical

20

documentation from his doctor. After informing the trial court of his exposure and after the court's request for medical documentation, he did, indeed, provide the trial court documentation from his doctor of his need to isolate himself during the period of September 21, 2021, to October 11, 2021, for medical reasons. The trial court chose not to honor this documentation due to a lack of diagnosis and demanded proof of a positive COVID-19 diagnosis. After the trial court's rebuff, Shamsiddeen emailed that court on September 26, addressing its rejection of the medical mandate that he quarantine:

> I supplied as noted by this court, the order from my doctor about my medical release until my quarantine is over, which is indicated as October 11, 2021 . . . . I will for further clarification, for this court, have my doctor add quarantine to his order. The doctors [sic] concern is not only for my health but for the welfare of the general public who may come into contact with me, which is his responsibility . . . . The doctor has determined that my exposure to the general public may be hazardous and possibly even deadly for those who may come into contact with me. With that being said, I will abide by my doctors [sic] orders and remain quarantined until my doctor releases me.

As the trial judge acknowledged, Shamsiddeen, on the day of his client's trial, "emailed the [c]ourt administrator again and had a person from the Staff of the City of Jackson legal department to hand deliver a doctor's note[,]" which stated expressly that he was under a medical quarantine until October 11, 2021. Therefore, the attorney communicated and provided documentation of the necessity of his being excused from court.

¶49. Despite the doctor's medical order for the attorney to quarantine, the trial judge rejected the quarantine order and demanded proof that he had been infected. The trial court mandated a higher burden than was necessary to grant a continuance: a positive COVID-19 diagnosis. The trial judge incorrectly required Shamsiddeen to prove that he, indeed, was

21

sick.[6] A positive COVID-19 diagnosis for the lawyer was not necessary for the judge to grant

him and his client a continuance. This Court previously had issued orders prohibiting

attorneys from entering Mississippi courtrooms following a physician-ordered quarantine or

upon being exposed to COVID-19. In Emergency Administrative Order Number 5, this Court

had ordered:

> [1.]In the interest of preventing the transmission of COVID-19, personnel should be posted at all public entry points of all courts in the state, and individuals should be prohibited from entry if they have:
>
> [a.] Been asked to self-quarantine by any doctor, hospital, or health agency
>
> [b.] Been diagnosed with or have had contact with anyone who has been diagnosed with COVID-19
>
> . . . .
>
> [2.]A case involving an attorney or party who is ill or in a high-risk category shall be rescheduled.
>
> [3.]Individuals with legitimate court business who are ill . . . are advised to stay home and request a continuance.

Emergency Admin. Order-5, No. 2020-AD-00001-SCT (Miss. Mar. 20, 2020). These

provisions were rescinded by Emergency Administrative Order Number 20, which had been

in effect prior to Shamsiddeen's alleged misconduct. But Emergency Administrative Order

Number 21, which was in effect at the time of Shamsiddeen's alleged misconduct, stated:

> [A]ll prospective jurors should be informed that if they have been diagnosed with any illness . . . they shall contact the court by telephone. They shall not come to the courthouse before speaking with court personnel. All parties, *attorneys*, and witnesses shall be informed of the same and shall take the same

---

[6]Because the lawyer himself had been exposed to the disease but was not infected, the court, in effect, ordered him to do something that he could not do.

precautions.

Emergency Admin. Order-21, No. 2021-AD-00001-SCT (Miss. Aug. 5, 2021) (emphasis added). These orders demonstrate that the overarching and ongoing intent of this Court and that of Mississippi physicians was and is to prevent the transmission and spread of COVID-19. Thus, it was not necessary for the documentation from a physician to describe or disclose the specifics of a person's illness in order for the judge to grant a continuance. Neither the attorney nor the physician based the necessity for the attorney's placement under quarantine upon the attorney's being infected personally with the virus, but rather—as was the case with millions of persons all over the world—the attorney was placed under quarantine because he had been *exposed* to someone who did have the disease. If Shamsiddeen had chosen to disregard the doctor-ordered quarantine, he could have put people in the courtroom, indeed, in the entire courthouse, at risk. By staying away and following the quarantine protocol, Shamsiddeen was being conscientious and responsible. By requiring a lawyer to produce a positive COVID-19 diagnosis in order to be granted a continuance and avoid being held in contempt, the trial judge held the lawyer to a higher standard, which, under the circumstances, was not appropriate. Mere exposure to a contagious and often-deadly disease, such as COVID-19, is enough to grant a continuance for the safety of others.[7]

---

[7]Despite the advancement of medical achievements, COVID-19 can be hard to detect as some individuals may be carriers of the disease despite being asymptomatic; the tests are not always reliable; and the vaccines are no guarantee against infections. *See* Centers for Disease Control and Prevention, *Overview of Testing for SARS-CoV-2, the virus that causes COVID-19* (updated Sept. 28, 2022), https://public4.pagefreezer.com/browse/CDC%20Covid%20Pages/08-02-2023T11:31/ht

¶50. Additionally, the majority states that "even if Shamsiddeen was unable to provide the trial court with a positive COVID-19 diagnosis, he could have provided, at the very least, a doctor's note confirming what *he himself had already advised the trial court*, i.e., that he had been exposed to COVID-19 and was experiencing symptoms." Maj. Op. ¶ 37. The majority asserts that "[t]his would have enabled the trial court to evaluate information provided by a medical professional." Maj. Op. ¶ 37. While the medical note did not list the name of the disease for which the attorney was being quarantined, he was nevertheless placed under a 10-day medical quarantine by a Mississippi physician. The medical note that placed the attorney under quarantine was sufficient to allow a trial court to evaluate the information provided by a licensed medical professional, *i.e.*, the individual has been forced to isolate to prevent the spread of a disease, and allow the trial court to make an informed decision.

¶51. Rule 32.1(d)(1) provides a partial definition of criminal contempt as "misconduct of a person that obstructs the administration of justice and that is committed either in the presence of the judge presiding in court or so near thereto as to interrupt its proceedings[.]" MRCrP 32.1(d)(1). Shamsiddeen's quarantine did not obstruct the administration of justice.

---

tps://www.cdc.gov/coronavirus/2019-ncov/hcp/testing-overview.html; *see also* Centers for Disease Control and Prevention, *Guidance for Antigen Testing for SARS-CoV-2 for Healthcare Providers Testing Individuals in the Community* (updated Apr. 4, 2022), https://public4.pagefreezer.com/browse/CDC%20Covid%20Pages/08-02-2023T11:31/ht tps://www.cdc.gov/coronavirus/2019-ncov/lab/resources/antigen-tests-guidelines.html; Centers for Disease Control and Prevention, *COVID-19 Contact Tracing Communication Toolkit for Health Departments* (updated Nov. 5, 2021), https://public4.pagefreezer.com/browse/CDC%20Covid%20Pages/07-02-2023T15:14/ht tps://www.cdc.gov/coronavirus/2019-ncov/php/contact-tracing-comms.html ("An infected person can spread COVID-19 starting from 2 days before they have any symptoms (or, if they are asymptomatic, 2 days before their specimen that tested positive was collected), until they meet the criteria for ending isolation.").

His actions were not committed in the presence of the trial judge nor were they committed "so near thereto as to interrupt its proceedings[.]" MRCrP 32.1(d)(1). It is obvious that Shamsiddeen was not in the presence of the trial judge when he was altogether absent from the trial. The question becomes whether his actions were taken so near thereto as to interrupt the trial court proceedings. Rule 32.1(d)(1)'s definition pertains to the elements of direct contempt. *See* MRCrP 32.1(c). Thus, we should look to our case law regarding direct contempt in order to interpret the phrase. Applicable Mississippi case law provides that "[d]irect contempt occurs in the presence of the court and may be dealt with immediately." ***Dennis v. Dennis***, 824 So. 2d 604, 608 (Miss. 2002). Shamsiddeen's failure to appear was not so near to the trial judge that she could have dealt with it immediately. The phrase "so near thereto as to interrupt its proceedings" connotes close, physical proximity. But Shamsiddeen was nowhere near the courthouse because he was obeying a physician-ordered quarantine. His alleged misconduct occurred outside the presence of the trial judge and was committed far away from the courthouse.

¶52.    Shamsiddeen should not have been held in contempt when he was forced into isolation by his doctor for the safety of others. Because he did not act willfully or obstruct the administration of justice, I would find that his actions were not criminal in nature. Although the trial judge is to be admired for doing everything she could to bring a serious case to trial, she erred by issuing a contempt order against Shamsiddeen in these circumstances.

¶53.    Because there was no criminal contempt, there was no direct contempt. *See **Dennis***, 824 So. 2d at 608 ("There are two forms of criminal contempt: direct and constructive.").

25

Therefore, I disagree with this Court's application of the *Wyssbrod v. Wittjen*, 798 So. 2d 352 (Miss. 2001), exception to this case.[8]

¶54.   Without a willful violation by the attorney, the imposition of monetary penalties by the trial court was not authorized. *Moses v. Moses*, 879 So. 2d 1036, 1041 (Miss. 2004) ("In order to award attorney's fees [and court costs] in a contempt matter, the trial court must first consider if there was a willful violation of the court's order."). Shamsiddeen should be relieved of the sanctions levied against him.

¶55.   The trial court erred by determining that Shamsiddeen had committed direct criminal contempt and by imposing sanctions upon him. I would reverse and render.

   **KING, P.J., JOINS THIS OPINION.**

---

[8]In *Wyssbrod*, we recognized an exception, which is that "when the reason for the absence is known to the court, then the contempt can be treated as direct contempt." *Donaldson v. Cotton*, 336 So. 3d 1099, 1111 (Miss. 2022) (citing *Wyssbrod*, 798 So. 2d at 360). It should be noted that the *Wyssbrod* exception never has been applied to a case in which the Mississippi Rules of Criminal Procedure were at issue.